FELDMAN v. STEIN BUILDING & LUMBER COMPANY.

1. CONTRACTS—PUBLIC POLICY.
   The right to freedom of contract is subordinate to a declared public policy.

2. LANDLORD AND TENANT—CONTRACTS—HOUSING LAW.
   Lessor of residential property may not by contract with lessee relieve lessor from consequences of future nonperformance of duty to exercise care as defined by State housing law (CL 1948, § 125.401 *et seq.*).

3. SAME—RESIDENTIAL APARTMENT—EXCULPATORY CLAUSE OF LEASE—STATUTES.
   Exculpatory clause in lease of a residential apartment which attempted to relieve lessor of liability for injury to lessee from

———

REFERENCES FOR POINTS IN HEADNOTES
[1] 17 Am Jur 2d, Contracts §§ 155, 156, 165, 174, 180.
[2, 3] 17 Am Jur 2d, Contracts §§ 174, 179, 180.
  32 Am Jur, Landlord and Tenant § 739.

any act or neglect of lessor or its agents *held,* void, as against public policy, in lessee's action for injuries sustained when she fell on accumulated ice on parking lot furnished for exclusive use of the tenants, in view of statute imposing duty upon lessor to keep premises clean (CL 1948, § 125.474).

Appeal from Wayne; Burdick (Benjamin D.), J. Submitted Division 1 October 7, 1966, at Detroit. (Docket No. 581.) Decided February 28, 1967. Leave to appeal denied April 26, 1967. See 379 Mich 761.

Complaint by Opal Feldman against Stein Building & Lumber Company, a Michigan co-partnership, and its members, Herbert Harris, Alan E. Stein and Harry Hooberman, for damages resulting from injuries when she fell on a parking lot adjoining defendants' apartment building. Plaintiff was a tenant of the building and the parking lot was furnished by defendants for the exclusive use of the tenants. Summary judgment for defendants. Plaintiff appeals. Reversed and remanded for trial.

*Levine & Benjamin (Allan H. Tushman* and *Sherwin Tukel,* of counsel), for plaintiff.

*Garan, Lucow & Miller (Richard L. Lehman,* of counsel), for defendants.

LESINSKI, C. J. Plaintiff, Opal Feldman, brought an action for negligence against the defendants, and here appeals a summary judgment granted below.

Plaintiff, lessee of an apartment located at 17170 Meyers road in Detroit, sustained injuries as a result of a fall on the parking lot which adjoined the apartment building and which was furnished for the exclusive use of the tenants of said building. Plaintiff alleged that defendants' negligence in failing to remove an accumulation of ice on the parking lot in breach of their legal duty was a proximate

cause of her injuries. Defendants' answer contained, *inter alia;* notice of an affirmative defense, to wit: a paragraph[1] in the existing leasehold agreement signed by the parties thereto which precluded any liability on the part of the lessor for injuries such as those sustained by the plaintiff. Defendants' motion for summary judgment was grounded, and subsequently granted, on this basis. On appeal, the plaintiff alleges that this "exculpatory clause" is contrary to public policy.

The recital of the facts above reveals that the issue which must be determined in the instant case is the validity of an "exculpatory" clause in residential leasehold agreements. We caution at the outset that the question which we decide is limited to residential leases and does not embrace and should not be extended to apply to a determination of the validity of such clauses in commercial leases which are not covered by Michigan statutes relating to dwellings.[2]

The initial consideration in resolving this issue is the applicability of the Michigan housing law, CL 1948, § 125.401 *et seq.* (Stat Ann 1958 Rev § 5.2771 *et seq.*) to the case at bar. We note that the intent of the legislature in its enactment thereof is clearly specified in the title thereto:

"An act to promote the health, safety and welfare of the people by regulating the light and ventilation,

---

[1] "Neither lessor nor its agents shall be liable for damages to lessee or to any person claiming through lessee * * * for injury to person or damage to or loss of property wherever located from any cause; * * * this provision includes particularly but not exclusively all claims arising from the building or any part thereof being or becoming out of repair * * * nor for any damage or injury occasioned by water, snow or ice being upon or coming through the roof, stairs, walks or any other place upon or near said premises, or otherwise, * * * or from any act or neglect of lessor or its agents."

[2] See CL 1948, § 125.402 (Stat Ann 1958 Rev § 5.2772), for the definitions of dwellings encompassed by the statute.

sanitation, fire protection, maintenance, alteration and improvement of dwellings; to define the classes of dwellings affected by the act, to establish administrative requirements and to establish remedies and fix penalties for the violation thereof."

The section of the statute particularly relevant to the instant case is CL 1948, § 125.474 (Stat Ann 1958 Rev § 5.2846)[3] which deals with the duty of the landlord to keep the premises clean. In the absence of Michigan case law construing this language to either exclude or include snow removal, we turn to construction of analogous statutory language out-of-state. In *Greenstein* v. *Springfield Development Corp.* (1960), 22 Misc 2d 740 (204 NY Supp 2d 518), the New York court determined that an icy pathway on the premises was within the contemplation of similar language.[4] We agree. A common sense reading of the language of the Michigan provision must necessarily include snow and ice.

Since we find that ice removal is one of the statutory duties imposed by a penal statute, and since the plaintiff is clearly within the protection thereof, we are brought by this determination to the ultimate issue of this case—the validity of a contractual agreement which would immunize the landlord from liability for breach of this statutory duty.

---

[3] "Cleanliness of dwellings. Every dwelling and every part thereof shall be kept clean and shall also be kept free from any accumulation of dirt, filth, rubbish, garbage or other matter in or on the same, or in the yards, courts, passages, areas or alleys connected therewith or belonging to the same. The owner of every dwelling shall be responsible for keeping the entire building free from vermin. The owner shall also be responsible for complying with the provisions of this section except that the tenants shall be responsible for the cleanliness of those parts of the premises that they occupy and control."

[4] " 'The owner shall keep all and every part of a multiple dwelling, the lot on which it is situated, and the roofs, yards, courts, passages, areas or alleys appurtenant thereto, clean and free from vermin, dirt, filth, garbage or other thing or matter dangerous to life or health.' "

While affirming the principle of freedom of contract, we note the well-settled rule that where freedom of contract and declared public policy are in conflict, the former necessarily must yield to the latter.

The question of the validity (or invalidity) of exculpatory provisions has fathered progeny in the form of a prolificacy of legal writing—case law, annotations and, ultimately, statutes have been its offspring.

In four States, Massachusetts, Illinois, Maryland and New York, specific legislation has been enacted which declares such agreements void as against public policy. The New York statute of 1937 (Section 234 of the real property law) as cited in *Gordon v. McAfee* (1945), 184 Misc 469 at 470, 471 (54 NY Supp 2d 443 at 445), is an example thereof:

> " 'Every covenant, agreement or understanding in or in connection with or collateral to any lease of real property exempting the lessor from liability for damages for injuries to person  *  *  *  caused by or resulting from the negligence of the lessor, his agents, servants or employees, in the operation or maintenance of the demised premises  *  *  *  shall be deemed to be void as against public policy and wholly unenforceable.' "

It is relevant to inquire into the background of such legislation. Prior to its passage in New York, several decisions[5] held that a lease clause exempting the landlord from his statutory duty would not enable said landlord to escape liability. However, prior case law had held such clauses valid.[6] The

[5] *Excellent Holding Corporation* v. *Richman* (1935), 155 Misc 257 (279 NYS 587); *Villa Victoria, Inc.,* v. *Fanning* (1935), 157 Misc 280 (283 NYS 145); *W. & B. Hosiery Corporation* v. *Kapplow* (1936), 158 Misc 872 (286 NYS 784).

[6] *Kirshenbaum* v. *General Outdoor Advertising Co. Inc.* (1932), 258 NY 489 (180 NE 245, 84 ALR 645), and cases cited in *Gordon, supra.*

need for a clear-cut statement to resolve this issue was imperative, and the legislation subsequently enacted clarified the intent.

A similar situation was recounted by the Illinois court in *Koehler* v. *Southmoor Bank & Trust Company* (1963), 40 Ill App 2d 195, 198, 199 (189 NE2d 22, 24):

"The recent history of the exculpatory clause is well known to the bench and bar. The clause was held valid by the supreme court of Illinois in 1957 in *O'Callaghan* v. *Waller & Beckwith Realty Co.,* 15 Ill 2d 436 (155 NE2d 545). Following that decision, the legislature enacted a law which invalidated such clauses in leases. Ill Rev Stat, ch 80, § 15a (1959)."

In *Eastern Avenue Corporation* v. *Hughes* (1962), 228 Md 477, 480 (180 A2d 486, 488), the Maryland court of appeals, in upholding an exculpatory clause, listed the jurisdictions which found such exculpatory clauses valid, and followed this listing with the citation of the New York, Massachusetts, and Illinois cases which had upheld such provisions as not against public policy, and then concluded with the statement:

"In the latter States the legislatures have subsequently enacted statutes invalidating some types of exculpatory clauses."

In 1964, the Maryland legislature took similar action.[7]

New Hampshire, without mention of a specific housing law and without a statute declaring such clauses void as against public policy, did so by court decision in *Papakalos* v. *Shaka* (1941), 91 NH 265, 268 (18 A2d 377, 379), saying:

---

[7] 5 Md Ann Code, art 53, § 40 (1966 **Cum Supp**).

· ·"One may not by contract relieve himself from the consequences of the future nonperformance of his common-law duty to exercise ordinary care."

In *Kuzmiak* v. *Brookchester, Inc.* (1955), 33 NJ Super 575 (111 A2d 425), the court set forth a comprehensive analysis of the law in the area. The court found sufficient State interest in the regulation and supervision of apartment buildings through the board of tenement housing supervision; it discussed the landlord's common-law duty for maintenance of premises under his control; and it concluded that since under present conditions the comparative bargaining positions of landlord and tenant are *not* equal, such exculpatory clauses are contrary to public policy.[8]

We cite 6A Corbin, Contracts, § 1515, "Power to Waive or Bargain Away Rights and Defenses Conferred by Statute" p 728, wherein that eminent authority said:

"It is obvious that when a right, a privilege, or a defense is conferred upon an individual by the law, it is conferred upon him because it is believed to be in the public interest to do so. In many such cases it is believed to be contrary to the public interest to permit him to waive or to bargain away the right, privilege, or defense; and when ·it is so believed the attempted waiver or bargain is inoperative."

In keeping with this philosophy, we hold that the attempted waiver or bargain here is inoperative as against public policy and therefore void.

[8] It is noteworthy that New Jersey distinguishes between the validity of such clauses in residential and commercial leases. In the latter, such clauses have been upheld. In *Midland Carpet Corp.* v. *Franklin Associated Properties* (1966), 90 NJ Super 42, 47, (216 A2d 231, 234), this language was used to set forth the rationale:

"In the case of a lease of industrial property, as in the instant ·case, no such inequality of bargaining position exists; the exculpatory provisions of such a lease are normally valid and enforceable."

Since the clause which formed the basis for the summary judgment is void, we reverse and remand for trial on the merits. Costs to appellant.

J. H. GILLIS and HOLBROOK, JJ., concurred.