## GOSSMAN v LAMBRECHT

1. LANDLORD AND TENANT—DUTY—NEGLIGENCE—ICE AND SNOW—
   COMMON PASSAGEWAYS—LIABILITY.

   A landlord, absent a contract, has no duty to his tenant to
   remove from common passageways any natural accumulation
   of snow and ice; however, he may be liable when a dangerous
   accumulation or condition has arisen artificially from his negli-
   gent maintenance of the common passageway or some other
   part of the premises.

2. NEGLIGENCE—INVITEE—ICE AND SNOW—LIABILITY.

   Nonliability to invitees for injuries resulting from falls on natural
   ice and snow applies to all landowners, including homeowners,
   store owners, and other businessmen.

3. STATUTES—HOUSING LAW—CLEANLINESS OF DWELLINGS—ICE AND
   SNOW—LANDOWNERS—BUSINESS PARKING LOTS—BUSINESS EN-
   TRANCES—DUTY—INVITEE.

   The section of the Housing Law of Michigan providing for the
   cleanliness of dwellings should not be interpreted to require all
   owners of dwellings, in the cities and suburbs affected, to
   remove natural accumulations of ice and snow from residential
   lots when that duty is not shared by businesses openly inviting
   the public to use their parking lots and entrances (MCLA
   125.474).

4. STATUTES—HOUSING LAW—CLEANLINESS OF DWELLINGS—ICE AND
   SNOW.

   The section of the Housing Law of Michigan providing for the
   cleanliness of dwellings requires no more of a landowner than
   is required by the common law with respect to removal of ice
   and snow (MCLA 125.474).

5. APPEAL AND ERROR—CHANGE IN LAW—LANDLORD AND TENANT—
   DUTY—ICE AND SNOW—LEGISLATURE—SUPREME COURT.

   A change in Michigan law covering a landlord's duty to his
   tenants in keeping the premises free from natural accumula-

REFERENCES FOR POINTS IN HEADNOTES

[1–5] 49 Am Jur 2d, Landlord and Tenant §§ 822, 823.
  Liability of landlord for personal injury or death due to defective
  inside or stairways for use of several tenants. 25 ALR2d 364.

tions of ice and snow should be made by the Legislature or by the Michigan Supreme Court.

Appeal from Wayne, James L. Ryan, J. Submitted Division 1 June 12, 1974, at Detroit. (Docket No. 16809.) Decided August 12, 1974. Leave to appeal granted, 393 Mich —.

Complaint by Robert C. Gossman and Nancy E. Gossman against Edward F. Lambrecht, Jr., and Robert P. Lambrecht, doing business as Arbor Forest Apartments, for damages for injuries sustained in a fall on ice. Verdict and judgment for plaintiffs. Defendants appeal. Reversed and remanded for a new trial.

*Lampert & Fried* (by *David M. Fried* and *Gary E. Levitt),* for plaintiffs.

*Bileti & Valenti (Norman L. Zemke,* of counsel), for defendants.

Before: J. H. GILLIS, P. J., and ALLEN and EL-LIOTT,* JJ.

ELLIOTT, J. Plaintiffs, Robert and Nancy Gossman, moved into the defendants' three-year-old Arbor Forest Apartments in East Lansing two years before Mr. Gossman slipped and fell on ice. The apartment complex consists of 8 or 9 two-story buildings with 8 to 15 units in each. On Monday, January 26, 1970, Mr. Gossman left the apartment for work shortly before 7:45 a.m. It had been cold and snowy the previous week, but on Sunday, the 25th, "it got warm, the sun was out and everything was thawing and it was a real nice day". It had become colder in the evening, and overnight

---

* Circuit judge, sitting on the Court of Appeals by assignment.

there was a freezing rain. As he left the apartment building he observed the sidewalk covered with wet ice. An ice glaze coated the snow in the yards and the banks along the sidewalks. He saw others scraping ice off of their car windshields, and he thought that his car door might be iced-over. To reach his parking space he had to walk upon a sidewalk in front of a clubhouse. Thawing ice dripped from the overhanging clubhouse roof onto the sloped and uneven sidewalk below. The slope toward the clubhouse permitted water to collect and ice to accumulate. He walked carefully noticing that the sidewalk in front of the clubhouse was a bit wetter than the rest of the ice. Near the clubhouse door, he reported, "all of a sudden my feet went right out in front of me". He fractured two vertebrae when he landed on his back. Defendants appeal verdicts of $50,000 and $5,000 for plaintiffs.

Plaintiffs abandoned a common-law theory of recovery requiring a showing, under *Betts v Carpenter,* 239 Mich 260; 214 NW 96 (1927), that the ice and water on the sidewalk did not result from natural causes but were produced artificially by the construction or maintenance of the clubhouse eaves or sidewalk below, or both. Plaintiffs' chosen theory, based on *Feldman v Stein Bldg & Lumber Co,* 6 Mich App 180; 148 NW2d 544 (1967), posited a statutory duty on the apartment owner to remove ice and snow from the sidewalk, imposed by the Michigan Housing Law (MCLA 125.401 *et seq.;* MSA 5.2771 *et seq.).*

Plaintiffs requested an instruction that if defendants knew or should have known of the dangerous conditions created by ice and snow accumulations and failed to remove it to permit safe use by the tenants, then defendants were negligent as a mat-

ter of law; and that defendants had a statutory duty to make reasonable inspections. Essentially, the court gave these instructions, rejecting defense requests that the jury must find in their favor if the condition resulted from a natural accumulation of ice on a normal, outdoor, unobstructed sidewalk and not from any other cause. The court also rejected an alternative request that defendants must have had a reasonable opportunity to correct the condition before this accident occurred or liability could not arise. Thus, if the condition arose suddenly and the landowners, after they knew or should have known of it, did not have sufficient time to correct the condition the jury must find for defendants. Defendants claim instructional error.

The issue requires first an examination of *Feldman, supra.* The section of the Housing Law it considered provides:

"Sec. 74. Cleanliness of dwellings. Every dwelling and every part thereof shall be kept clean and shall also be kept free from any accumulation of dirt, filth, rubbish, garbage or other matter in or on the same, or in the yards, courts, passages, areas or alleys connected therewith or belonging to the same. The owner of every dwelling shall be responsible for keeping the entire building free from vermin. The owner shall also be responsible for complying with the provisions of this section except that the tenants shall be responsible for the cleanliness of those parts of the premises that they occupy and control." MCLA 125.474; MSA 5.2846.

*Feldman, supra,* p 183, held:

"In the absence of Michigan case law construing this language to either exclude or include snow removal, we turn to construction of analogous statutory language out-of-state. In *Greenstein v Springfield Development Corp* (1960), 22 Misc 2d 740 (204 NY Supp 2d 518), the

New York court determined that an icy pathway on the premises was within the contemplation of similar language. We agree. A common sense reading of the language of the Michigan provision must necessarily include snow and ice."

Later and higher New York authority, *Doyle v Streifer,* 34 App Div 2d 183; 310 NYS2d 165 (1970), reconsidered the section of the New York Multiple Residence Law relied on in *Greenstein* and similar to our Housing Law, quoted above, and reached a conclusion opposite to *Greenstein* and *Feldman,* holding (p 185):

"There is nothing in the legislative history of this section which would indicate that it was intended to apply to snow and ice cases which arise as a result of precipitation from the sky, and such a construction, it seems obvious, was not the intention of the Legislature and is improper."

*Doyle, supra,* states the duty of a New York apartment owner (p 185):

"The landlord is under a duty to use reasonable care to keep the walks and areaways which constitute the ingress and egress of the tenant reasonably safe, but cannot be held liable for a defect in his property unless he has notice of the defect or in the exercise of due care should have had such notice. In these snow and ice situations he may know that snow has fallen and thus realize that a dangerous condition exists but he is entitled to remedy the condition. Where he has not had a sufficient time to remedy the condition caused by the elements liability will not result." (Citations omitted.)

According to *Doyle, supra,* New York imposes the Connecticut rule. Michigan, although not explicitly, has followed the Massachusetts rule. Under that view a landlord, absent a contract, has no duty to his tenant to remove from common pas-

sageways any natural accumulation of snow and ice. However, a landlord may be liable when a dangerous accumulation or condition has arisen artificially from the landlord's negligent maintenance of the common passageway or some other part of the premises. In Michigan, nonliability to invitees for injuries resulting from natural ice and snow applies to all landowners, including homeowners, store owners and other businessmen; *Gillen v Martini,* 31 Mich App 685; 188 NW2d 43 (1971); *Bard v Weathervane of Michigan,* 51 Mich App 329; 214 NW2d 709 (1974). *Bard* states the question and answer (pp 330–331):

"What duty does the operator of a business owe to invitees of the business with respect to the icy, rutted condition of the business parking lot arising from traffic on natural accumulation of snow?

"[T]he basic duty of an invitor to an invitee [is] inapplicable to the case before us, which involves a hazard created by natural elements.

"Snow falls on invitor, invitee, and all residents of the snow area alike. All are, or should be, aware of the hazards arising from natural accumulations of snow such as icy conditions and ruts from traffic. These are common wintertime hazards to all who live in areas where snow accumulates, and these hazards, without more, give rise to no duty owed by an invitor to an invitee.

"Given the conditions that existed in this case, what was the duty that defendant owed to plaintiffs? It was to not increase these natural hazards or create a new hazard by any affirmative act, *Weider v Goldsmith,* 353 Mich 339; 91 NW2d 283 (1958)."

Adherents of the Massachusetts rule believe it better suited to northern climates where slippery conditions from ice and snow are natural, frequent and without fault of the landowner, unless he increases the hazard. A duty to remove naturally

formed ice and snow is seen as both unjust and impractical. Shoveling a layer of snow on a sidewalk in freezing, drifting weather may make the surface more slippery.

The Rhode Island Supreme Court recently explained the rationale and requirements of the Connecticut rule in discarding the Massachusetts rule and adopting the Connecticut rule in *Fuller v Housing Authority of Providence,* 108 RI 770; 279 A2d 438; 49 ALR3rd 382 (1971), followed by an annotation on the subject:

"The soundness of the Connecticut Rule becomes evident when one considers today's tendency for apartment-house living. In any one building are apt to be found tenants of all ages. Some may seldom wander far from the apartment complex. They should be furnished with reasonably safe common ways as they come and go to and from their apartments. One could see the difficulty if a tenant, faced with the Massachusetts Rule, sought to seek agreement among his fellow tenants for the sharing of the responsibility of removing snow and ice which have collected on the common premises. The landlord with a minimum of expense can and should attend to these details.

"As we adopt the Connecticut Rule, we wish to emphasize that a landlord is not a guarantor for the safety of his tenants as they proceed along the common ways. What we do say, however, is that an accumulation of ice or snow upon those portions of the premises reserved for the common use of his tenants may make the landlord liable for injuries sustained by his tenant which are due to such an accumulation, provided the landlord knows, or should have known, of the condition and failed to act within a reasonable time thereafter to protect against injuries caused thereby. The mere accumulation of snow or ice does not ipso facto make the landlord liable; he must be given a reasonable time after the storm has ceased to remove the accumulation of snow or ice found on the common ways or to take such measures as will make the common areas reason-

ably safe from the hazards arising from such a condition. We would also point out that a tenant, who has at his disposal more than one route of ingress and egress to his premises, may not benefit from the Connecticut Rule if it be shown that he was aware that his landlord had furnished him with one reasonably safe approach to his dwelling place but instead chose to travel on another yet unshoveled or unsalted passageway." *Fuller v Housing Authority of Providence, supra,* pp 774–775.

Our comments thus far provide background for a consideration of the Michigan housing act and *Feldman, supra,* which sought out-state aid in construing our statute. Its search located *Greenstein* as the only authority deciding a similar question. In *Greenstein,* the statute applied only to owners of multiple dwellings. The tenant slipped two days after the landlord knew of the slippery natural condition. *Doyle, supra,* overruled *Greenstein's* interpretation of the New York statute.

MCLA 125.474; MSA 5.2846 applies to all dwellings covered by the act; it is not limited to owners of multiple dwellings or apartment houses. It covers owners and tenants of single-family homes, house trailers or any structure used for sleeping. It prohibits unclean accumulations not only on common passages but also on "yards" defined as the entire lot. An obvious purpose of the legislation is to control accumulations on residential properties that breed vermin (flies, roachs, rats etc.) or increase the hazard of fire or like dangers to the dwellers. A violation of the section is a crime. Although this section does not expressly create civil liability, a violation has been held to be negligence per se in *Bravo v Chernick,* 28 Mich App 210; 184 NW2d 357 (1970). "Accumulation" connotes a buildup over a period of time. Dirt, garbage and rubbish do not accumulate quickly and inevitably as do snow and ice from winter

storms. The effect on our citizens' hearts and backs should be considered.

It does not seem "common sense" to continue an interpretation of that section, relying on a case rejected in its own state and without support in any other, requiring all owners of dwellings (in the cities and suburbs covered) to remove natural accumulations of ice and snow from residential lots when that duty is not shared by businesses openly inviting the public to use their parking lots and entrances. Certainly a statutory duty imposing a criminal penalty on owners of dwellings cannot require them to shovel, scrape, chip or melt possibly acres of paved areas before a storm has subsided and a reasonable time for the effort has elapsed.

Moreover, *Feldman* concerned the validity of an exculpatory lease provision relieving the landlord from liability for any act or neglect of the lessor or its agents; the case does not indicate whether the ice accumulation was natural or unnatural. That appeal arose from a summary judgment based on the exculpatory clause. We think the interpretation of MCLA 125.474; MSA 5.2846 in *Feldman,* if it includes a duty to remove natural accumulations of ice and snow, was mistaken. The interpretation was not decisionally necessary.

We think MCLA 125.474; MSA 5.2846 requires no more of a landowner than is required by the common law with respect to removal of ice and snow.

Yet, the legislative interest, apparent in the statute, to protect inhabitants of multiple and other dwellings from unreasonable dangers which can be remedied by ordinary care and the considerations persuading several states to espouse the Connecticut rule cause us to wonder whether

Michigan should not follow the example of Rhode Island and other states by doing so. Both Dean Prosser and 2 Harper & James, The Law of Torts, § 27.17, pp 1516–1517, endorse the Connecticut rule.[1]

We do not decide whether Michigan should adopt the Connecticut rule. First, we do not believe an apartment owner's general duty of reasonable care should include reasonable efforts within a reasonable time to remove natural accumulations of snow and ice unless a similar requirement is also owed by a business to its customers or other invitees. Second, we think that such a change in Michigan law, if desirable, should be made by the Legislature or by our Supreme Court, whose rulings we are bound to fathom and to follow. Finally, adoption of the Connecticut rule would not sustain the verdict in this case. The trial judge instructed the jury that a violation of the statute, which included a duty to remove snow and ice, once the existence of it was known, or should have been, was negligence as a matter of law. He did not include the requested instruction that the landlord must have had sufficient time before the accident to correct the natural condition. Under the Connecticut rule, defendants would have been entitled to that instruction. Mr. Gossman slipped at 7:45 a.m. which, we notice, was ten minutes before the sun would rise that mid-winter day on an ice-covered community.

Therefore we reverse for a new trial in which

---

[1] Prosser, Torts (3rd ed), § 63, p 420, states:  ·

"The prevailing view, by a scant margin, is that the (lessor's general) duty extends to conditions of purely natural origin, such as ice and snow on the steps; and there seems to be little reason in the distinction as to such conditions made by some of the courts"; a footnote adds: "Reasonable care may, however, permit the landlord to wait until the end of a storm".

the rule of *Betts, supra, Weider, supra, Gillen, supra,* and *Bard, supra,* should be applied.

Reversed and remanded.

All concurred.