369 So.2d 616 (1979)
JOHN'S PASS SEAFOOD COMPANY, Appellant,
v.
Richard WEBER, Sr., et al., Appellees.
No. 78-1156.
District Court of Appeal of Florida, Second District.
March 2, 1979.
Rehearing Denied April 9, 1979.
*617 Richard E. Wolverton of Lyle, Skipper, Wood & Anderson, St. Petersburg, for appellant.
Kenneth C. Deacon, Jr. and Irene H. Sullivan of Harris, Barrett & Dew, St. Petersburg, for appellees.
GRIMES, Chief Judge.
This appeal involves the question of whether a commercial lessor can exonerate himself from liability to his lessee for failure to comply with a fire code mandated by municipal ordinance.
The appellee (plaintiff) rented a slip at appellant's (defendant) dock to moor his fishing boat. One night a fire on another vessel moored to the dock spread to the plaintiff's boat. The plaintiff sued the defendant for the damage to his boat, contending that the defendant was negligent in failing to provide fire extinguishers and other firefighting equipment pursuant to the provisions of the Treasure Island City Code.[1] As an affirmative defense, defendant pled the existence of a signed instrument in which the plaintiff agreed to hold the defendant harmless from all liability occasioned by the use of the dock, even if the harm were caused by the defendant's negligence. Upon grounds of public policy, the court refused to permit this agreement to be introduced into evidence at the trial. The jury returned a verdict for the plaintiff in the sum of $10,000.
There is no need to quote the agreement because it quite clearly purports to exonerate the defendant from liability for its own negligence. When the terms are clear, Florida recognizes the validity of exculpatory agreements. University Plaza Shopping Center, Inc. v. Stewart, 272 So.2d 507 (Fla. 1973). The question here is whether the defendant should be permitted to contract away its responsibility to comply with the fire code when the person with whom the contract is made is one of those whom the fire code is designed to protect.
There are several Florida cases in which exculpatory clauses executed by a tenant in favor of his landlord have been upheld, but none of these dealt with the specific violation of safety codes. E.g., Rubin v. Randwest Corporation, 292 So.2d 60 (Fla. 4th DCA 1974); Middleton v. Lomaskin, 266 So.2d 678 (Fla. 3d DCA 1972). With the passage of Section 83.47, Florida Statutes (1977), the validity of an exculpatory provision for any purpose in a residential lease is in serious doubt. In any event, we have found no cases in which the point before us has been squarely addressed.
The defendant relies primarily upon Russell v. Martin, 88 So.2d 315 (Fla. 1956), which involved an accident in which the plaintiff's minor son was killed while riding his bicycle across some railroad tracks. The railroad had given the plaintiff a license to use the crossing as a private crossing, but the plaintiff had agreed in writing to save the railroad harmless from all claims arising out of the use of the crossing. The plaintiff stated that he would not rely on the railroad for signals or warnings of approaching trains. The railroad's alleged acts of negligence were the operation of its train at a high speed in violation of a city ordinance and the failure to signal a warning of its approach. The supreme court construed the provisions of the agreement as exculpatory and affirmed a summary judgment for the railroad. The court rejected the plaintiff's argument that the exculpatory agreement was void as against public policy.
We find the Russell case distinguishable because we do not believe the supreme court passed on the question of whether one can exonerate himself from compliance with the affirmative requirements of a safety ordinance. The public policy contention discussed by the supreme court was whether under any circumstances a common carrier could contract away its liability for its own negligence. The court held that the carrier could do so when acting in its private capacity.
*618 In support of his position, the plaintiff points to Susco Car Rental System of Florida v. Leonard, 112 So.2d 832 (Fla. 1959), in which the court held that a party could not contract away responsibility under the dangerous instrumentality doctrine. However, this case is beside the point because a third person who was not a party to the contract suffered the injury.
The emphasis of public policy in this sensitive area is indicated by the fact that in Florida the violation of a fire code is considered to be negligence per se. Concord Florida, Inc. v. Lewin, 341 So.2d 242 (Fla. 3d DCA 1976). We believe that the public policy of this state would be frustrated by permitting enforcement of exculpatory clauses of this nature as they relate to statutes or ordinances the very purpose of which is to insure the safety of the persons inhabiting the leased premises. That the lessor may still be subject to sanction by governmental authority is not enough. Moreover, our conclusion is not based upon any presumption of inequality of bargaining power. A lessor simply should not be permitted to exempt himself from responsibility to a lessee for damages resulting from the lessor's negligence if such an exemption effectively immunizes the lessor from liability for breach of a positive statutory duty to protect the well-being of the lessee.
Substantial support for this position is found in other jurisdictions. See Annot., 49 A.L.R.3d 321, 351 (1973). In Boyd v. Smith, 372 Pa. 306, 94 A.2d 44 (1953), the Pennsylvania court refused to permit a landlord to use an exculpatory provision to escape liability for failing to provide a fire escape required by statute. An agreement to exonerate his landlord for negligence did not preclude an apartment tenant's recovery for falling on the ice in an adjacent parking lot when a Michigan law required the landlord to keep the parking lot clear. Feldman v. Stein Building & Lumber Co., 6 Mich. App. 180, 148 N.W.2d 544 (Mich. Ct. App. 1967). In American States Insurance Co. v. Hannan Construction Co., 283 F. Supp. 988 (N.D.Ohio 1966), aff'd 392 F.2d 171 (6th Cir.1968), the court held that the public policy of Ohio would be thwarted by the enforcement of an exculpatory provision relieving a landlord from liability to a tenant caused by the landlord's failure to comply with the building codes for safe construction. The court noted that the public policy demanded this result despite the fact that in Ohio the violation of a building code is held to be only evidence of negligence rather than negligence per se.
In order that our holding not be misunderstood, we do not strike down all exculpatory clauses which exonerate lessors from liability for their own negligence. We simply hold that these clauses shall be ineffective to relieve the lessor from liability to the lessee where the lessee's damages are caused by the lessor's failure to comply with a penal statute or ordinance imposing a positive duty upon the lessor which is intended to protect the person or property of the lessee or the public generally.[2] We also limit our holding to those violations which by their nature would constitute negligence per se. We need not pass on the question of whether the same rule would apply if the violation constituted only evidence of negligence.[3]
AFFIRMED.
HOBSON and RYDER, JJ., concur.
NOTES
[1] The owners and captain of the adjacent boat were also sued, but those claims are not the subject of this appeal.
[2] Our use of the words "public generally" recognizes the fact that many safety ordinances which are applicable to those who lease property to others contemplate the protection of a larger class of persons than simply the lessee.
[3] This may further serve to distinguish Russell v. Martin, supra, because there the violation of the speeding ordinance would have presumably constituted no more than evidence of negligence. Clark v. Sumner, 72 So.2d 375 (Fla. 1954).