LOIS E. WILLIAMS, Plaintiff-Appellant, v. LINCOLN TOWER ASSOCIATES *et al.*, Defendants-Appellees.

Second District   No. 2—89—1367

Opinion filed January 24, 1991.

GEIGER, J., dissenting.

Harold L. Turner, of Turner & Shoemaker, and Street, Larson & Turner, both of Rockford (Joseph G. McGraw, of counsel), for appellant.

Bruce C. Erickson and William M. Goff, both of Mateer & Erickson, of Rockford, and Holmstrom & Kennedy, of Crystal Lake (Frederic T. Brandt, of counsel), for appellee Lincoln Towers Associates.

Mateer & Erickson, of Rockford (William M. Goff, of counsel), for appellee Donewald Property Management, Inc.

JUSTICE WOODWARD delivered the opinion of the court:

Plaintiff, Lois E. Williams, appeals from an order of the circuit court of Stephenson County, dismissing her third amended complaint for failing to state a cause of action against the defendants, Lincoln Tower Associates (Lincoln) and Donewald Property Management, Inc. (Donewald).

In her third amended complaint, plaintiff alleged that she is 79 years of age and suffers from Parkinson's disease. Due to her economic situation, she resides in a federally subsidized apartment in a building for the elderly owned by Lincoln and managed by Donewald. Lincoln prescribed both written and oral rules for the tenants of the building. One of the oral rules required that the tenants remove the snow from their vehicles before the parking lot of the building was plowed. On December 28, 1987, a "floor captain" informed plaintiff and the other tenants that the snowplow was about to arrive. At approximately 11 a.m. on that date while removing the snow from her vehicle, plaintiff slipped on the icy pavement surrounding her vehicle, causing her to fall and fracture her right hip. Specifically, plaintiff alleged in her third amended complaint that defendants were guilty of negligence in that they:

> "Required elderly tenants to remove snow from their vehicles before the parking lot was plowed when [they] knew or should have known that due to advancing years, said tenants were more susceptible to falling and injuring themselves on ice and snow."

Finally, plaintiff alleged damages as a result of her injury.

The defendants filed motions to dismiss the third amended complaint on the ground that the complaint failed to allege facts which establish a duty on the part of the defendants. Following a hearing, the trial court dismissed the third amended complaint, and this appeal followed.

The sole issue on appeal is whether the third amended complaint states a cause of action.

Plaintiff contends, first, that the "natural accumulation rule" should not be construed so as to negate the defendants' duty to exer-

cise due care to maintain the parking lot in a reasonably safe condition.

■ Early on our supreme court established the rule that a landlord has the duty of exercising reasonable care to keep the premises over which he has control for the common use of the tenants in a reasonably safe condition and that such a landlord is liable for an injury which results to persons, lawfully in such place, from a failure to perform such duty. (*Murphy v. Illinois State Trust Co.* (1940), 375 Ill. 310, 313-14.) In *Cronin v. Brownlie* (1952), 348 Ill. App. 448, this court reversed a judgment for a plaintiff who was injured when she slipped on some ice and fell while walking on a sidewalk owned and maintained by the defendant. The evidence showed that snow but not the ice had been removed from the sidewalk. The evidence also showed that plaintiff, a tenant in defendant's building, was fully aware of the icy condition of the sidewalk and attempted to walk on it at night, wearing dress shoes with high heels. After noting that the authorities throughout the country were divided on the issue, this court chose to follow the majority or "Massachusetts rule" that a landlord has no legal duty to remove snow and ice from areas used jointly with his tenants when the ice and snow accumulate from natural causes. *Cronin*, 348 Ill. App. at 456-57.

The rule articulated in *Cronin* continues to be the rule followed today in Illinois. (*Burke v. City of Chicago* (1987), 160 Ill. App. 3d 953, 956.) There are, however, exceptions to this rule. In order for a landlord to be liable, it must be shown that he has in some way caused an unnatural accumulation of ice and snow or that he aggravated a natural condition. (*Williams v. Alfred N. Koplin & Co.* (1983), 114 Ill. App. 3d 482, 486; see also *Durkin v. Lewitz* (1954), 3 Ill. App. 2d 481.) Liability can arise if the landlord undertakes to remove the snow and ice from his property and does so negligently. (*Williams*, 114 Ill. App. 3d at 486.) Liability may also arise where the landlord has assumed the duty to remove snow and ice by contract with the tenant. However, even where a contract exists, a duty cannot be imposed where the precipitation is recent or continuous. See *Schoondyke v. Heil, Heil, Smart & Golee, Inc.* (1980), 89 Ill. App. 3d 640, 643-45.

As we have previously stated, subject to certain exceptions, the "natural accumulation rule" still applies in Illinois. To avoid the effect of this rule, plaintiff must plead one of the exceptions carved from the rule. Plaintiff must plead that defendants caused an unnatural accumulation of snow or aggravated a natural condition; that defendants undertook to remove the snow and ice and did so negligently; or that defendants had a contractual obligation with the plaintiff to remove

snow and ice and a reasonable amount of time had passed during which the defendants should have removed the accumulated snow and ice.

■ In her third amended complaint, plaintiff does not allege any contractual obligation with the plaintiff or other tenants of the building on the part of the defendants to remove the snow and ice from the parking lot. Nor does plaintiff allege that defendants caused an unnatural accumulation of snow which aggravated a natural condition. Although plaintiff does allege that the defendants were negligent in requiring their elderly tenants, such as the plaintiff, to remove the snow from around their vehicles, she alleged that her participation in removal of snow from her vehicle in the parking lot was what actually caused her to fall, not that the defendants' snow removal was done negligently. We are of the opinion that, since plaintiff failed to plead an exception to the "natural accumulation rule," the trial court properly dismissed the third-party complaint for failing to state a duty owed to the plaintiff by the defendants.

■ We are also of the opinion that the exceptions to the "natural accumulation rule" demonstrate that the rule continues to provide exemptions from liability which are, in fact, in keeping with the requirements of modern day living. We therefore reject plaintiff's second argument that the "natural accumulation rule" must be rejected as an anachronism of the common law and violative of public policy.

■ Finally, plaintiff contends that assuming the continued viability of the "natural accumulation rule," defendants owed a separate duty of ordinary care to the plaintiff because they coerced her participation in the snow removal process as a condition of her continued tenancy. Whether the law imposes a duty does not depend on foreseeability alone. The likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant must also be taken into account. *Lance v. Senior* (1967), 36 Ill. 2d 516.

Plaintiff relies on *Quinn v. Sigma Rho Chapter of Beta Theta Pi Fraternity* (1987), 155 Ill. App. 3d 231. In that case, plaintiff, a pledge of the fraternity, was required to participate in an initiation ceremony in order to become a member of the fraternity. As part of the ceremony, each pledge was required to consume large quantities of alcoholic beverages. Plaintiff participated in the ceremony and, as a result, had to be hospitalized.

In reversing an order dismissing Quinn's third amended complaint and remanding the cause, the reviewing court stated:

"We agree with the case authorities holding that the furnish-

ing of intoxicating beverages to underage persons, such as plaintiff, does not create a legal duty. We feel, however, that we are faced with a situation which consists of more than the mere furnishing of alcohol. The facts, as alleged in plaintiff's amended complaint, describe a fraternity function where plaintiff was required to drink to intoxication in order to become a member of the fraternity. Even worse, according to the complaint, the alcohol content in plaintiff's body was 'at or near fatal levels.' We cannot close our eyes to the fact that the abuse illustrated in the present case could have resulted in the termination of life and that plaintiff was coerced into being his own executioner. Therefore, we hold that a legal duty was created and the complaint states a cause of action in negligence.

It is true that plaintiff could have avoided the situation by walking away from the fraternity. In that respect, plaintiff's actions in participating in the ceremony were voluntary. Yet, as the complaint alleges, membership in the defendant fraternity was a 'much valued status.' It can be assumed that great social pressure was applied to plaintiff to comply with the fraternity's membership 'qualifications,' perhaps to the extent of blinding plaintiff to any dangers he might face. To the extent that plaintiff acted willingly, liability can be transferred to him under the principles of comparative negligence.

We do not allow a cause of action here without careful consideration of the nature of the duty. Using the factors found in *Lance v. Senior* (1967), 36 Ill. 2d 516, 224 N.E.2d 231, we believe the burden of such a duty is rightly placed on defendant. When required to consume such large amounts of alcohol, it is foreseeable and likely that injuries will occur. Even the injury alleged here is foreseeable. It is a small burden to guard against such injuries. The activity was clearly an illegal hazing activity and discouraged by defendant's own parent organization. Finally, we can think of no better party to bear the burden of plaintiff's injuries than the one that required him to sustain them. The result is then predictable. A fraternal organization, held in high esteem, is to be liable for injuries sustained when requiring those seeking membership to engage in illegal and very dangerous activities." (*Quinn*, 155 Ill. App. 3d at 237.)

The reviewing court went on to state that a cause of action existed in *Quinn* for two reasons, namely, the fact that plaintiff was required to drink to intoxication and because the legislature had enacted a statute against hazing.

■ Defendants contend that plaintiff failed to allege in her third amended complaint that she was "coerced" into participating in the snow removal activity by the threat of losing her federally subsidized apartment. We agree. At best, plaintiff's allegations indicate that she complied with the snow removal rule because she was concerned that her failure to follow the rule might cause her to lose her apartment; however, she makes no allegations that the defendants had threatened to terminate her tenancy if she did not cooperate.

Defendants also contend that *Quinn* is distinguishable from the case at bar. Defendants argue that the court decided *Quinn* on the basis that, since there existed an antihazing statute designed to protect a person such as Quinn and that Quinn had suffered a type of harm that the statute was supposed to protect against, it was *prima facie* evidence of negligence without which there was no cause of action for negligence.

After reviewing plaintiff's third amended complaint, we agree with defendants that the complaint does not specifically allege that she would lose her apartment if she failed to follow the rule regarding snow removal. Plaintiff does allege that she complied with her floor captain's demand that she participate in the snow removal because "she was very desirous of maintaining a protected place to live as well as her federally rent subsidized apartment." Whatever plaintiff may have *thought* would be the consequence of her refusal to remove the snow from around her car does not control here. Nowhere does she allege that defendants would have terminated her tenancy as a consequence for her failure to participate in the snow removal process. This is unlike the situation in *Quinn*, for there plaintiff alleged that in order to become a member of the fraternity, he *had* to participate in the ritual which ultimately caused him to be injured.

*Quinn* is also distinguishable from the case at bar because one basis for establishing a cause of action in that cause was the existence of a statute, *i.e.*, antihazing statute. As the court in *Quinn* noted:

"The supreme court has stated: ' "[T]he violation of a statute or ordinance designed for the protection of human life or property is *prima facie* evidence of negligence." ' [Citations.] In order to sustain such a cause of action, two conditions must be met: 'first, the plaintiff must be within the class of persons the ordinance was designed to protect; and second, the plaintiff must have suffered the type of harm the ordinance was designed to prevent.' [Citations.] In the instant case, we find the plaintiff was in the class of persons the statute was designed to protect. The allegations in the complaint allege sufficient facts

to establish that *he suffered a type of harm the statute was designed to prevent.*" (Emphasis added.) *Quinn,* 155 Ill. App. 3d at 238.

■ In order to bring her third amended complaint within the requirement of *Quinn,* plaintiff cites several statutes which she argues either impose a duty and hence liability on the defendants in this case, or, at the very least, express a public policy favoring the imposition of such a duty and liability upon the defendants. We disagree.

Plaintiff cites the criminal housing management statute which provides, in pertinent part, as follows:

"A person commits the offense of criminal housing management when, having personal management or control of residential real estate, whether as a legal or equitable owner or as a managing agent or otherwise, he recklessly permits the physical condition or facilities of the residential real estate to become or remain in any condition which endangers the health or safety of any person." (Ill. Rev. Stat. 1989, ch. 38, par. 12—5.1.)

Plaintiff relies on *Feldman v. Stein Building & Lumber Co.* (1967), 6 Mich. App. 180, 148 N.W.2d 544. In that case, recovery for injuries suffered as a result of a fall on snow and/or ice was permitted based upon a duty created by a statute similar to the one cited above. The Michigan statute required landlords to keep the premises free from accumulations of garbage, dirt, rubbish, etc.

Defendants correctly point out that plaintiff's third amended complaint did not allege that defendants recklessly permitted the condition of the premises to become or remain in any condition so as to endanger the health and safety of the plaintiff. Defendants also point out that in *Gossman v. Lambrecht* (1974), 54 Mich. App. 641, 221 N.W.2d 424, the Michigan court noted that the primary holding in *Feldman* involved the validity of the exculpatory lease, and the case did not indicate whether it involved a natural or unnatural accumulation of ice. The *Grossman* court held that the statute at issue did not impose a duty on a landlord to remove natural accumulations of ice and snow.

The other statutes relied on by the plaintiff at best indicate a public policy to provide senior citizens with safe and sanitary housing. Those statutes do not protect against the type of harm suffered by the plaintiff in this case.

The dissent in this case concludes that a legal duty was created when the defendants compelled the plaintiff to perform the physical act of snow removal. The dissent cites no additional authority but, in-

stead, takes the position that the creation of such a duty is supported by the court's reasoning in *Quinn* and, therefore, disagrees with our conclusion that *Quinn* is distinguishable from the case at bar.

In *Quinn*, the court found that a legal duty existed based upon two elements: first, that the complaint alleged that unless Quinn participated in the initiation ceremony, he would not be permitted to join the fraternity; and second, that such an initiation ceremony violated the antihazing statute, which the court found was designated to protect a class of people to which Quinn belonged. Thus, under *Quinn*, plaintiff here would have to plead: first, that unless she participated in the snow removal process, she would have been evicted from her apartment; and second, that there existed a statute designed to protect a class of people to which plaintiff belonged from the conduct of the defendants in this case.

The dissent argues that the equivalent to the second requirement is not necessary in this case. Nothing in *Quinn* suggests that either requirement can be dispensed with when finding the existence of a duty under such cases. Moreover, even if we were to dispense with the second requirement, plaintiff still failed to plead that her failure to participate in the snow removal would result in the termination of her tenancy.

Plaintiff does not set forth the text of the apartment rule in her third amended complaint, nor does she plead that the penalty provided for in the rule for failure to participate in the snow removal was eviction. Moreover, contrary to the dissent's argument, not all violations of apartment rules result in eviction.

Established case law compels the finding that no duty is owed by the defendants to the plaintiff under the pleadings in this case, and we are of the opinion that changes in established case law necessitated by public policy are more properly made by our supreme court.

The judgment of the circuit court is affirmed.

Affirmed.

McLAREN, J., concurs.

JUSTICE GEIGER, dissenting:

I respectfully dissent. I cannot agree with the majority that this case presents a legal condition totally distinguishable from the precedent established by *Quinn v. Sigma Rho Chapter of Beta Theta Pi Fraternity* (1987), 155 Ill. App. 3d 231. In that case, the Appellate Court for the Fourth District held that the defendants owed Quinn a

duty of reasonable care where the defendant "pressured" Quinn by requiring him to consume alcoholic beverages past the point of intoxication before allowing him membership in their fraternity. (155 Ill. App. 3d at 237.) The court found that although Quinn's participation was voluntary,

> "membership *** was a 'much valued status.' It can be assumed that great social pressure was applied to plaintiff to comply with the fraternity's membership 'qualifications,' perhaps to the extent of blinding plaintiff to any dangers he might face." 155 Ill. App. 3d at 237.

The majority finds *Quinn* distinguishable since the plaintiff did not "specifically allege that she would lose her apartment if she failed to follow the rule regarding snow removal." (207 Ill. App. 3d at 919.) They state that "[a]t best, plaintiff's allegations indicate that she complied with the snow removal rule because she was concerned that her failure to follow the rule might cause her to lose her apartment." 207 Ill. App. 3d at 919.

The record is clear that the requirement that tenants shovel snow was contained in a rule propounded by the landlord. The only authority that a landlord has for creating rules for tenants is that authority created by the landlord-tenant relationship. It was therefore reasonable for Mrs. Williams to believe that if she violated the snow-shoveling rule she would be in violation of her lease and thus jeopardize her tenancy. This apprehension was fostered by the fact that the landlord did not request elderly tenants to participate in snow removal. Rather, he created a rule which, by virtue of being a rule, implied that conformance was mandatory.

The plaintiff alleged in her third amended complaint that because she is poor, she resides in a federally subsidized apartment building "for the elderly." Further, the plaintiff alleged that the defendants required that she and the other elderly tenants remove the snow from their vehicles before the parking lot was plowed. She complied only after the floor captain demanded that she participate in the snow removal and only because she "was very desirous of maintaining a protected place to live as well as her federally rent subsidized apartment."

As the court held in *Quinn*, I would hold that a legal duty was created when the landlord compelled its tenants to perform the physical act of snow removal. That duty would include an evaluation of the risks presented by the working environment when considered in light of the physical condition, including age and infirmity, of the worker-tenants. In view of that duty, I would find that the plaintiff's third amended complaint states a cause of action in negligence. A jury

could find that the defendants should surely know that their elderly tenants could easily slip and fall on the snow-and ice-covered parking lot, if they were required to go out and shovel.

The plaintiff could have reasonably believed that she would be evicted for failure to comply with the defendants' rules. Such a fear of eviction coerced the tenant to follow blindly the rules, even though she could be injured; the tenant could not effectively refuse to shovel her parking spot since the threat of eviction loomed over her head. Since I find that a duty was created by the actions of the landlord, the plaintiff has a right to have a jury determine if that duty was breached and if it was foreseeable that an elderly tenant under these conditions would slip, fall, and break a hip. See *Quinn*, 155 Ill. App. 3d at 237.

The *Quinn* court found two independent factors created the duty. First, the court considered the requirement that the plaintiff drink intoxicants; second, it considered the defendant fraternity's violation of an antihazing statute to support the duty. I see no reason why the equivalent of the second factor should be necessary in this case. I would hold that the plaintiff's complaint adequately alleges that the defendants owe her a duty of reasonable care. I therefore must respectfully dissent.