CORRIGAN, J.
(concurring). I concur in the result and virtually all of the reasoning of the majority opinion. In particular, I agree that (1) sidewalks and parking lots in leased residential areas are “common areas” under MCL 554.139(l)(a); (2) the natural accumulation of ice and snow is not subject to the lessor’s duty under MCL 554.139(l)(b) to “keep the premises in reasonable repair”; and (3) the Court of Appeals erred in concluding that language in the footnote in Teufel v Watkins, 267 Mich App 425, 429 n 1; 705 NW2d 164 (2005), could not constitute binding precedent.
My sole area of disagreement with the majority concerns its analysis of whether a lessor’s duty to keep the premises and common areas “fit for the use intended by the parties,” MCL 554.139(l)(a), obligates the lessor to remove natural accumulations of snow and ice. The majority correctly observes that the parking lot here was “fit for the use intended by the parties” where only one to two inches of snow had accumulated. Yet the majority goes on to state that in “more exigent circumstances” a natural accumulation of snow or ice could trigger the statutory duty. Not only is this conclusion unnecessary to the disposition of this case, but I believe it is founded on an erroneous analysis.
MCL 554.139(1) provides in part:
In every lease or license of residential premises, the lessor or licensor covenants:
*440 (a) That the premises and all common areas are fit for the use intended by the parties.
The majority resorts to a lay dictionary to define “fit” as “ ‘adapted or suited; appropriate^]’ ” Ante at 429, quoting Random House Webster’s College Dictionary (1997). The majority then concludes that in some unspecified “exigent circumstances,” ante at 430, a natural accumulation of ice or snow could render the parking lot unfit for its intended use.
The majority’s analysis hinges on its implicit view that the duty to keep the parking lot itself fit extends to transient conditions such as natural accumulations of snow or ice. This assumption overlooks a fair reading of the statutory text Mmiting the duty of fitness to the physical structure of the premises and common areas.[1] My analysis of the statutory covenant and its legal background suggests that it is limited to structural defects.
While a court may use a lay dictionary to define common words or phrases that lack a unique legal meaning, MCL 8.3a; People v Thompson, 477 Mich 146, 151-152; 730 NW2d 708 (2007), I would not assume that the terms used in MCL 554.139 lack an acquired legal meaning. Indeed, it appears that the statute codifies the implied warranty of habitability, and that this warranty does not protect against transient conditions such as ice or snow.
The duties set forth in MCL 554.139 are directed at ensuring that the premises are habitable. The statute *441 was enacted “ ‘to establish as a matter of law the landlord’s promissory duty to make the premises fit for habitation at the time of taking possession and throughout the term of period of tenancy.’ ” Rome v Walker, 38 Mich App 458, 462 n 3; 196 NW2d 850 (1972), quoting Schier, Draftsman: Formulation of Policy, 2 Prospectus, A Journal of Law Reform 227, 233 (1968) (emphasis added).
“At common law, a landlord generally had no duty to provide a habitable rental property.” 49 Am Jur 2d, Landlord and Tenant, § 447, p 455. See also Fisher v Thirkell, 21 Mich 1, 6-7 (1870). That traditional rule was abrogated as a majority of jurisdictions adopted, either by common law or by express statutory provision, an implied warranty of habitability. 49 Am Jur 2d, Landlord and Tenant, § 447, p 455.[2]
“An implied warranty of habitability requires that a dwelling be fit for its intended use; that is, it should be habitable and fit for living.” 52 CJS, Landlord & Tenant, § 687, p 607 (emphasis added). The warranty is breached where a “defect” exists that is “of a nature and kind which will prevent the use of the dwelling for its intended purpose to provide premises fit for habitation by its dwellers.” 49 Am Jur 2d, Landlord and Tenant, § 450, p 459 (emphasis added). This implied warranty extends to common areas. See id., § 447, p 455. A reasonable inference arises from the language of MCL 554.139(l)(a) (“fit for the use intended by the parties”) that it codifies the implied warranty of habitability.[3]
*442 The warranty of habitability extends only to “significant, structural defects” that “render the premises uninhabitable in the eyes of a reasonable person.” 52 CJS, Landlord & Tenant, § 687, p 607. The natural accumulation of ice or snow is not such a defect. Id. at 607 n 12; McAllister v Boston Housing Auth, 429 Mass 300, 306; 708 NE2d 95 (1999). The warranty extends only to “significant defects in the property itself.” McAllister, supra at 305.[4]
Therefore, in light of the legal background of the implied warranty of habitability and the codification of that warranty in MCL 554.139, I question the majority’s conclusion that the statutory duty applies to transitory conditions such as snow and ice accumulations. I would hold that the duty extends only to significant, structural defects that render the parking lot itself unfit for its intended use.
In any event, the majority’s analysis of this issue is unnecessary to the disposition of this case. As the majority correctly concludes, the one to two inches of accumulated precipitation in this case did not render *443 the parking lot unfit for its intended use. We thus need not speculate regarding whether a greater accumulation would, in some unspecified “exigent circumstances,” trigger the statutory duty.
For these reasons, I cannot join the majority’s analysis in full. In all other respects, I concur in the reasoning and conclusions set forth in the majority opinion.

 Notably, we have interpreted the highway exception to the governmental tort liability act, MCL 691.1402, in precisely this manner. See Nawrocki v Macomb Co Rd Comm, 463 Mich 143, 158; 615 NW2d 702 (2000); Haliw v Sterling Hts, 464 Mich 297; 627 NW2d 581 (2001) (holding that a natural accumulation of ice on a sidewalk did not implicate the highway exception because the plaintiffs injury was not caused by a defect in the sidewalk itself).

 The recognition of this warranty arose in light of “the realities of the modern urban landlord-tenant relationship.” 52 CJS, Landlord & Tenant, § 687, p 606.

 See also Browder, The taming of a duty — the tort liability of landlords, 81 Mich L R 99, 112 n 55 (1982) (listing MCL 554.139 as an *442 example of legislation that “has consisted of the enactment or amendment of landlord and tenant codes and laws, almost all of which have created a new duty in landlords similar in scope to the implied warranty of habitability declared by some courts”) (emphasis added).

 In Gossman v Lambrecht, 54 Mich App 641, 645-646; 221 NW2d 424 (1974), our Court of Appeals recognized that “Michigan, although not explicitly, has followed the Massachusetts rule. Under that view a landlord, absent a contract, has no duty to his tenant to remove from common passageways any natural accumulation of snow and ice.” The panel noted that “[a]dherents of the Massachusetts rule believe it better suited to northern climates where slippery conditions from ice and snow are natural, frequent and without fault of the landowner, unless he increases the hazard.” Id. at 646. Although MCL 554.139 was not at issue in that case, the Gossman panel held that a section of the Housing Law, MCL 125.474, providing for the cleanliness of dwellings, required no more of a landowner than is required by the common law regarding the removal of snow and ice. Id. at 649.