*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CASEY JOHN DAY,

       Plaintiff-Appellant,

and

TECHNOLOGY INSURANCE COMPANY INC,

       Intervening Plaintiff,

v

WOKO LLC,

       Defendant/Cross-Plaintiff-Appellee,

and

MKB FLORIDA HOLDINGS LLC and TOMMY'S DETROIT LLC,

       Defendants/Cross-Defendants.

UNPUBLISHED
February 24, 2022

No. 356726
Oakland Circuit Court
LC No. 2020-178797-NO

Before: BOONSTRA, P.J., and RONAYNE KRAUSE and CAMERON, JJ.

PER CURIAM.

      Plaintiff, Casey John Day, appeals by right the trial court's order granting summary disposition pursuant to MCR 2.116(C)(10) in favor of defendants WOKO LLC (WOKO), MKB Florida Holdings LLC (MKB), and Tommy's Detroit LLC (Tommy's). This matter arises out of injuries plaintiff suffered when he fell through the upper floor of a mezzanine structure that had been constructed by plaintiff's employer, Skiers Pier LLC (Skiers Pier). The incident occurred on the last day of Skiers Pier's operation, and contemporaneously with a sale of Skiers Pier's assets to Tommy's. The building itself was owned by WOKO. We affirm.

## I. BACKGROUND

In 1986, non-parties Paul Wolf and Ronald Koenig formed Skiers Pier, a boat dealership. Skiers Pier operated out of a showroom located on Dixie Highway in Waterford, Michigan. In 1999, Wolf and Koenig created WOKO, which acquired the showroom building. In 2000, Skiers Pier paid to have a mezzanine structure constructed in the showroom. The top of the mezzanine structure was plywood, supported by metal joists, and it was used for storage. In 2013, Koenig sold his interest in Skiers Pier to Wolf, but Koenig retained his interest in WOKO. At approximately the same time, WOKO and Skiers Pier entered into a lease agreement under which Skiers Pier leased the showroom from WOKO. The lease stated that it was effective September 1, 2013, and would terminate in eight years, although the lease was not fully signed for almost a year afterwards. The lease provided that Skiers Pier was responsible for maintenance and repair of the premises, and Skiers Pier could not assign the lease without written consent from WOKO. Plaintiff was employed by Skiers Pier as a salesperson.

In January of 2018, Wolf and his wife began negotiating with Matthew Borisch for the sale of Skiers Pier's assets. Borisch created Tommy's as the entity to purchase Skiers Pier's assets.[1] Wolf did not want the Skiers Pier employees to know about the upcoming sale, so although representatives from Tommy's visited the showroom, they did not inspect the entirety of the premises in detail. In particular, representatives from Tommy's did not inspect the top of the mezzanine structure. The sale was announced to Skiers Pier employees on the morning of February 14, 2018. The sale was thereafter consummated, although the exact timing of the sale is open to some interpretation.

The asset purchase agreement under which Tommy's purchased the assets of Skiers Pier states on its face that its effective date was February 13, 2018. The instrument assigning, transferring, and assuming the 2013 lease agreement (originally between Skiers Pier and WOKO) was ostensibly signed by Wolf and Borisch on February 15, 2018, and it was not signed by Koenig. The testimony casts doubt on those dates: Borisch testified that he was "absolutely positive that we were signing documents a week after the 16th," and he did not know who wrote the date of February 15, 2018, next to one of his signatures. Nevertheless, Wolf and Borsch agreed that on February 15, 2018, Skiers Pier was still operating out of the showroom. Wolf opined that February 15, 2018, was his last day as president of Skiers Pier and that all Skiers Pier employees would have been terminated that day. On February 16, 2018, the displaced Skiers Pier employees were invited to a meeting with Tommy's, at which Tommy's rehired most of the Skiers Pier employees. According to Borisch, Tommy's had no intention of continuing operations out of the Dixie Highway showroom, and any temporary use it made of the showroom would have been after February 16, 2018. Nevertheless, Tommy's made lease payments to WOKO for some time.

---

[1] Borisch also owns MKB, which is a holding company for Tommy's Florida, which in turn is not legally affiliated with Tommy's Detroit. Plaintiff apparently named MKB as a defendant in his complaint because he received worker's compensation benefits from a company that named MKB as an insured. In the trial court, plaintiff never seriously disputed MKB's argument that MKB was not an appropriate party to this matter; and on appeal, plaintiff does not challenge the trial court's dismissal of his claims against MKB. Therefore, MKB will not be further discussed.

The incident at issue in this matter occurred on the morning of February 15, 2018. On that day, plaintiff arrived for his shift at Skiers Pier at about 9:00 a.m. That day, Skiers Pier was getting ready for the "Cobo Hall boat show," which was to take place on February 17, 2018. A sales sign that Skiers Pier planned to use at the boat show was stored in the mezzanine. The sign was approximately 4.5 by 2.5 feet in size, and it weighed about 30 pounds. Wolf tasked Plaintiff with transporting this sign to the boat show. Plaintiff climbed the metal staircase that was the only way to access the top of the mezzanine at about 10:00 a.m. He did not notice any issues with the floor. However, after picking up the sign and beginning to walk back to the staircase, the floor gave way underneath him. Plaintiff fell through the floor up to his waist and suffered injuries as a result. Wolf and his wife denied any knowledge or notice of any defects in the floor, although plaintiff contends that three different Skiers Pier employees told him after his injury that the floor was unsound.

Plaintiff commenced this action against WOKO, MKB, and Tommy's. As to each defendant, plaintiff alleged ordinary negligence, premises liability, and nuisance in fact. Following motions for summary disposition, the trial court dismissed the negligence claims because plaintiff's claims sounded in premises liability. The trial court then dismissed the premises liability claims because there was no genuine question of fact that none of the defendants were in possession of the showroom on the date of the incident. Rather, at the time of the incident, "Skiers Pier had exclusive responsibility for the care and maintenance of the premises." The trial court opined that plaintiff "may have a cause of action against non-party Skier's [sic] Pier, and in turn, Skier's [sic] Pier may have a subrogation claim against WOKO," but WOKO was not directly liable to plaintiff. Because possession is an essential element of a nuisance claim, the trial court finally dismissed the nuisance claims.[2] Following the trial court's denial of a motion for reconsideration, this appeal followed.

## II. STANDARD OF REVIEW AND PRINCIPLES OF LAW

A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact. *Id*. at 120. We review de novo the proper interpretation of a contract, *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003), and the interpretation and application of statutes, rules, and legal doctrines. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

A premises liability claim arises out of injuries caused by a condition of the land. *James v Alberts*, 463 Mich 12, 18-19; 626 NW2d 158 (2001). "If the plaintiff's injury arose from an allegedly dangerous condition on the land, the action sounds in premises liability rather than ordinary negligence; this is true even when the plaintiff alleges that the premises possessor created

---

[2] The cross-claims in the trial court, and the claims brought by Technology Insurance Company, Inc, are not at issue in this appeal. As noted previously, plaintiff does not challenge the trial court's dismissal of his claims against MKB.

-3-

the condition giving rise to the plaintiff's injury." *Buhalis v Trinity Continuing Care Services*, 296 Mich App 685, 692; 822 NW2d 254 (2012). "Premises liability is conditioned upon the presence of both possession and control over the land . . . Ownership alone is not dispositive." *Merritt v Nickelson*, 407 Mich 544, 552-553; 287 NW2d 178 (1980) (quotation omitted). The possessor of premises must have been on actual or constructive notice of a dangerous defect in the premises and failed to remedy or warn of that defect. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 8; 890 NW2d 344 (2016). On appeal, plaintiff does not appear to dispute the trial court's correct conclusion that his claims sounded in premises liability rather than negligence.

"[A] nuisance in fact is a nuisance by reason of circumstances and surroundings . . . when its natural tendency is to create danger and inflict injury on person or property." *Wagner v Regency Inn Corp*, 186 Mich App 158, 164; 463 NW2d 450 (1990). "A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land" that "evolved as a doctrine to resolve conflicts between neighboring land uses." *Adkins v Thomas Solvent Co*, 440 Mich 293, 302-303; 487 NW2d 715 (1992). "The essence of private nuisance is the protection of a property owner's or occupier's reasonable comfort in occupation of the land in question." *Id*. at 303. Nuisances generally entail some kind of interference with a person's use of their own property. *Id*. at 307-310. However, a condition on the defendant-possessor's premises may constitute a nuisance as to a business invitee where those premises are open to the general public. See *Bluemer v Saginaw Central Oil & Gas Service, Inc*, 356 Mich 399, 402-403, 410-415; 97 NW2d 90 (1956). "A defendant held liable for the nuisance must have possession or control of the land." *Scholberg v Truman*, 496 Mich 1, 7; 852 NW2d 89 (2014) (quotation omitted). As with premises liability, ownership of property is not dispositive, and liability requires actual exercise of possession and control. *Id*. at 7-9.

## III. LIABILITY OF WOKO

We note as an initial matter that although Koenig was technically a half-owner of WOKO, he was apparently not actively involved. Wolf was, therefore, *effectively* the sole principal of both WOKO and Skiers Pier. Nevertheless, plaintiff has not argued that Wolf abused the corporate form of either entity, that the two entities should be treated as one and the same, or otherwise that the corporate veil should be pierced. Therefore, notwithstanding the fact that Wolf was the principal of both WOKO and Skiers Pier, those two entities are legally distinct and must be treated as such.

The mezzanine structure was constructed in 2000, more than a decade before WOKO and Skiers Pier entered into the lease agreement. It is not clear whether, at the time, there was any formalized understanding of who was responsible for the showroom. Nevertheless, the evidence establishes that the mezzanine was constructed at the behest of, paid for by, and entirely used by, Skiers Pier. The evidence therefore tends to show that the mezzanine structure was practically possessed and controlled by Skiers Pier from the outset. In 2013, when the lease agreement was entered into, control and possession of the mezzanine was formalized: the "Tenant" (i.e., Skiers Pier) was obligated to maintain and repair the premises. The testimony established that, thereafter, WOKO "never really paid anything," and Skiers Pier was responsible for repairs and maintenance of the showroom.

As set forth above, liability for an injury sustained due to a defect in premises turns on whether the party is in possession and control over the premises, and therefore practically capable of preventing the injury from occurring. WOKO owned the showroom building. However, the terms of the lease and the course of conduct by the parties clearly shows that only Skiers Pier, not WOKO, was in actual possession and control of the mezzanine structure—at least since 2013 and arguably since it was constructed in 2000. Plaintiff does not attempt to argue that WOKO was in actual possession and control of the mezzanine structure, nor would the evidence support such an argument. Rather, plaintiff argues that, as landlord, WOKO was nevertheless legally liable, either because a latent defect existed in the mezzanine structure when the lease was entered into in 2013, or because lessors are generally liable to employees of tenants for defects in the premises. Plaintiff misreads the applicable caselaw.

Plaintiff correctly argues that landlords are obligated to warn their tenants of latent defects in the premises that exist at the time a lease is executed. See *Calef v West*, 252 Mich App 443, 451; 652 NW2d 496 (2002). That rule is inapplicable here, because plaintiff is not WOKO's tenant. Landlords may generally be liable for defects in the premises that existed when the premises were turned over to a tenant that were not disclosed to the tenant. See *Bluemer*, 356 Mich at 412. However, there is no evidence that the mezzanine structure had a design defect from the outset, there is no evidence the mezzanine structure had any flaws or deterioration in 2013, and, in any event, the mezzanine structure was constructed by Skiers Pier rather than WOKO.

Plaintiff also correctly argues that the above rule is not without exceptions: landlords may have duties to their tenants' employees or invitees under certain circumstances. However, those circumstances all involve the landlord retaining or exercising actual possession and control over the particular premises at issue.

In *Samson v Saginaw Professional Bldg Inc*, 393 Mich 393, 407-409; 224 NW2d 843 (1975), the landlord was held liable when a tenant's employee was raped in an elevator; critically, however, the elevator was a common area maintained directly by the landlord. In *Lipsitz v Schechter*, 1 Mich App 137, 138-139; 134 NW2d 849 (1965), the landlord was potentially liable because it allegedly exercised control over a window that injured the plaintiff.[3] In *Ginsberg v Wineman*, 314 Mich 1, 6-8; 22 NW2d 49 (1946), the landlord was held liable for injuries resulting from repairs that the landlord itself had gratuitously performed. In *Evans v Van Kleek*, 110 Mich App 798, 803; 314 NW2d 486 (1981), a landlord was held liable for damage resulting from defective electrical wiring that the landlord installed, because the landlord knew or should have known about the defect but failed to disclose it, and the lessee had no reason to discover the defect. In *Ella v Boyce*, 112 Mich 552, 557-558; 70 NW 1106 (1897), the Court observed that the owner of a building who placed an obstruction in a hallway would be liable to a tenant's employee for injuries caused by the obstruction, because "such obstruction constitutes a breach of the duty of the owner to keep such hallway open to the use of tenants." Consistent with the other cases, *Ella* merely reinforces the principle that a landlord may be liable for injuries resulting from defects in premises over which the landlord itself actually exercised possession and control.

---

[3] In *Lipsitz*, the landlord was ultimately found not liable for unrelated reasons.

WOKO was not in actual possession and control over the mezzanine structure at the time plaintiff was injured, there is no evidence that the mezzanine structure was defective in 2013 when WOKO formally leased the premises to Skiers Pier, and because the mezzanine structure was constructed by Skiers Pier, WOKO may never have had possession and control over the structure. Therefore, the trial court properly held that WOKO could not be directly liable to plaintiff for his injuries.[4]

## IV. LIABILITY OF TOMMY'S

Because of the sloppy dating and execution of the asset sale and lease assumption documents, it is a closer question whether Tommy's can be liable. In particular, there is a clear question of fact when the assumption of lease document was executed. As plaintiff points out, it is possible the assumption of lease was executed earlier in the morning on the day of the incident. It is also possible that it was not executed until a week later. Nevertheless, the date on which the assumption of lease was executed is less important as it is not a material fact. The evidence establishes that at the time of the incident, plaintiff was still an employee of Skiers Pier and was in the process of retrieving the sign on behalf of Skiers Pier pursuant to that employment.

Plaintiff points out that our Supreme Court has approved of the definition of "possessor" in 2 Restatement Torts, 2d § 328 E, p 170, as follows:

(a) a person who is in occupation of the land with intent to control it or

(b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b). [*Merritt*, 407 Mich at 552 (quotation marks omitted).]

Formalities aside, the evidence shows that Tommy's was not in occupation of the showroom at the time of the incident. Put another way, although there is a question of fact whether Tommy's may have been entitled to possession of the showroom, it was *actually* still occupied by Skiers Pier. Possession is insufficient by itself: for liability to attach, a defendant must also be in control of the premises. *Merritt*, 407 Mich at 552. Because Tommy's did not have any practical ability, at the time of the incident, to prevent the injury from occurring, Tommy's could not be liable for plaintiff's injury. See *Nezworski v Mazanec*, 301 Mich 43, 56; 2 NW2d 912 (1942).

---

[4] As the trial court noted, plaintiff may have a claim against Skiers Pier, and Skiers Pier may in turn have a claim against WOKO. However, because Skiers Pier is not a named party, that possibility is speculative. We nevertheless observe that, pursuant to MCL 450.4805(3), "[a] dissolved limited liability company may sue *and be sued* in its name and process may issue by and against the company in the same manner as if dissolution had not occurred" (emphasis added).

The trial court therefore properly dismissed the claims of premises liability as to WOKO and Tommy's.

## V. NUISANCE IN FACT

Plaintiff's claims of nuisance in fact fail for two reasons. First, as set forth above, the same requirement of possession and control applies to a nuisance claim. Because neither WOKO nor Tommy's were actually in possession *and* control of the mezzanine structure at the time of the incident, they cannot be held liable on a nuisance theory. Secondly, nuisance is not an appropriate theory of liability, because the condition of the mezzanine structure did not interfere with plaintiff's use of his own land, *Adkins*, 440 Mich at 307-310, and the mezzanine structure was not open to the public. Cf. *Bluemer*, 356 Mich at 402-403, 410-415.

The trial court properly found that plaintiff's claims sounded in premises liability rather than in negligence. The trial court properly dismissed plaintiff's remaining claims against WOKO and Tommy's because neither entity was actually in possession and control of the mezzanine structure at the time of the incident.

Affirmed.

/s/ Mark T. Boonstra
/s/ Amy Ronayne Krause
/s/ Thomas C. Cameron