**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED JUNE 25, 2008

IRVING ALLISON,

    Plaintiff-Appellee,

v

No. 133771

AEW CAPITAL MANAGEMENT, L.L.P.,
d/b/a SUTTON PLACE APARTMENTS,

    Defendant,

and

VILLAGE GREEN MANAGEMENT COMPANY
and BFMSIT, II,

    Defendants-Appellants.

_____

BEFORE THE ENTIRE BENCH

MARKMAN, J.

We granted leave to appeal to address the following questions: (1) whether parking lots in leased residential areas constitute "common areas" under MCL 554.139(1)(a); (2) whether the natural accumulation of snow and ice is subject to the lessor's duty set forth in MCL 554.139(1)(a) to keep premises and common areas "fit for the use intended by the parties"; and (3) whether the natural

accumulation of snow and ice is subject to the lessor's duty set forth in MCL 554.139(1)(b) to "keep the premises in reasonable repair." We answer the first two questions in the affirmative and the third question in the negative. Because we conclude that the duty set forth in MCL 554.139(1)(a) was not violated here because one to two inches of snow did not render the parking lot unfit for the use intended, we reverse the judgment of the Court of Appeals and reinstate the trial court's order granting summary disposition in favor of defendants.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff fractured his ankle during a fall when he was walking on one to two inches of accumulated snow in the parking lot of his apartment complex. He then noticed ice on the ground where the snow had been displaced. Plaintiff filed suit against defendant AEW Capital Management, doing business as Sutton Place Apartments, alleging negligence and breach of the covenant to maintain and repair the premises, MCL 554.139(1). The trial court granted summary disposition to defendant, concluding that the danger was "open and obvious," and directed that the pleadings be amended to replace AEW with the proper defendants, Village Green Management Company and BFMSIT, II.

The Court of Appeals affirmed the trial court's ruling on the basis of *Teufel v Watkins*, 267 Mich App 425, 429 n 1; 705 NW2d 164 (2005), which held that MCL 554.139(1) does not control a lessor's duty to remove snow and ice from a parking lot. Unpublished opinion per curiam, issued November 28, 2006 (Docket No. 269021). The panel expressed its disagreement with *Teufel* and sought a

2

conflict resolution panel. *Id*. After this request was denied, the panel granted plaintiff's motion for reconsideration and vacated its initial opinion. Unpublished order, entered January 19, 2007 (Docket No. 269021). The panel then reversed the trial court's grant of summary disposition, stating that *Teufel* did not constitute governing precedent because its holding regarding the inapplicability of MCL 554.139(1) was only presented in a footnote. *Allison v AEW Capital Mgt, LLP (On Reconsideration)*, 274 Mich App 663, 669-670; 736 NW2d 307 (2007). The panel also concluded that a parking lot constitutes a common area under MCL 554.139(1)(a), that one of a parking lot's intended uses entails persons walking on it, and that a parking lot covered with ice is not fit for that purpose. *Id*. at 670-671. Defendants filed an application for leave to appeal in this Court, and we granted leave to appeal. 480 Mich 894 (2007).

## II. STANDARD OF REVIEW

This Court reviews de novo the grant or denial of a summary disposition motion. *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007). Matters of statutory interpretation are also reviewed de novo. *Id*. Defendants moved for summary disposition under MCR 2.116(C)(8) and (10). A motion under MCR 2.116(C)(8) should be granted if the pleadings fail to state a claim as a matter of law, and no factual development could justify recovery. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). A motion under MCR 2.116(C)(10) should be granted if the evidence submitted by the parties "fails to establish a genuine issue regarding any material fact, [and] the moving party is entitled to

3

judgment as a matter of law." *Id*. at 120; see also MCR 2.116(C)(10). There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

## III. ANALYSIS

Plaintiff asserted two different causes of action in this case: (1) negligence and (2) breach of the covenants to keep the premises and common areas fit for their intended use and to keep the premises in reasonable repair, MCL 554.139(1).[1] If defendants had a duty under MCL 554.139(1)(a) or (b) to remove snow and ice from the parking lot, then plaintiff could proceed on his second claim even if plaintiff's negligence claim was barred by the "open and obvious" danger doctrine.[2] MCL 554.139 provides a specific protection to lessees and licensees of residential property in *addition* to any protection provided by the common law. The statutory protection under MCL 554.139(1) arises from the existence of a residential lease and consequently becomes a statutorily mandated

---

[1] The merits of plaintiff's negligence claim are not before this Court.

[2] Under common-law negligence principles, a premises owner has a duty to exercise reasonable care to protect an invitee from an unreasonable risk of harm caused by a dangerous condition on the premises, but not when the condition is "open and obvious." *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001). However, a defendant cannot use the "open and obvious" danger doctrine to avoid liability when the defendant has a statutory duty to maintain the premises in accordance with MCL 554.139(1)(a) or (b). *Woodbury v Bruckner*, 467 Mich 922 (2002); *O'Donnell v Garasic*, 259 Mich App 569, 581; 676 NW2d 213 (2003).

4

term of such lease. Therefore, a breach of the duty to maintain the premises under

MCL 554.139(1)(a) or (b) would be construed as a breach of the terms of the lease

between the parties and any remedy under the statute would consist exclusively of

a contract remedy.[3]

## A. "COMMON AREAS"

MCL 554.139 provides:

> (1) In every lease or license of residential premises, the lessor or licensor covenants:
>
> (a) That the premises and all common areas are fit for the use intended by the parties.
>
> (b) To keep the premises in reasonable repair during the term of the lease or license, and to comply with the applicable health and safety laws of the state and of the local unit of government where the premises are located, except when the disrepair or violation of the

[3] Although the nature and extent of plaintiff's remedy are not at issue in this case, we note that, typically, a plaintiff's remedy for breach of contract is limited to damages that "arise naturally from the breach or those that were in the contemplation of the parties at the time the contract was made." *Kewin v Massachusetts Mut Life Ins Co*, 409 Mich 401, 414; 295 NW2d 50 (1980) (citation omitted). The purpose of this remedy is to "place the nonbreaching party in as good a position as if the contract had been fully performed." *Corl v Huron Castings, Inc*, 450 Mich 620, 625; 544 NW2d 278 (1996).

The dissent "would hold that a plaintiff who proves a claim under MCL 554.139(1) is entitled to full damages for the injury," citing the Second Restatement of Torts, § 357, which states that "'[a] lessor of land is subject to liability for physical harm caused to his lessee . . . if the lessor, as such, has contracted by a covenant in the lease or otherwise to keep the land in repair. . . .'" *Post* at 8. This section of the Second Restatement of Torts applies to the tort of negligence. We reiterate that the merits of plaintiff's negligence claim are not before this Court. In addition, as discussed *infra*, the covenant to repair, MCL 554.139(1)(b), does not apply to common areas and would not impose a duty on the lessor to keep parking lots free from the natural accumulation of ice and snow.

applicable health or safety laws has been caused by the tenant's wilful or irresponsible conduct or lack of conduct.

The primary goal of statutory interpretation is "to ascertain the legislative intent that may be reasonably inferred from the words expressed in the statute." *G C Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 420; 662 NW2d 710 (2003). If the language of the statute is clear, we presume that the Legislature intended the meaning expressed. *Id*. If the statute does not define a word, we may consult dictionary definitions to determine the plain and ordinary meaning of the word. *Koontz v Ameritech Services, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002). However, legal terms of art are to be construed according to their peculiar and appropriate meaning. MCL 8.3a.

MCL 554.139 does not define the term "common areas." However, Black's Law Dictionary (6th ed), p 275, defines "common area" as: "[i]n law of landlord-tenant, the portion of demised premises used in common by tenants over which landlord retains control (*e.g.* hallways, stairs) and hence for whose condition he is liable, as contrasted with areas of which tenant has exclusive possession." This definition is in accord with the plain and ordinary meaning of the term. "Common" is defined as "belonging equally to, or shared alike by, two or more or all in question[.]" *Random House Webster's College Dictionary* (1997). Therefore, in the context of leased residential property, "common areas" describes those areas of the property over which the lessor retains control that are shared by two or more, or all, of the tenants. A lessor's duties regarding these

areas arise from the control the lessor retains over them. See, e.g., *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 499; 418 NW2d 381 (1988) (stating that "a landlord may be held liable for an unreasonable risk of harm caused by a dangerous condition in the areas of common use retained in his control such as lobbies, hallways, stairways, and elevators").

The issue in this case concerns whether parking lots within leased residential property constitute "common areas" within the meaning of the statute. The Court of Appeals answered in the affirmative, relying on *Benton v Dart Properties*, *Inc*, 270 Mich App 437; 715 NW2d 335 (2006), to conclude that parking lots constitute common areas. In *Benton*, *supra* at 442-443, the Court of Appeals held that sidewalks within an apartment complex constitute common areas under MCL 554.139(1)(a) because they are located within the complex, they are constructed and maintained by the lessor, and they are relied on by tenants to access their apartments and vehicles. In this case, the Court of Appeals adopted this reasoning to conclude that parking lots also constitute common areas because they are located within the complex, they are maintained by the lessor, and tenants must necessarily walk on parking lots to access their vehicles. *Allison*, *supra* at 670.

We agree that a parking lot within a leased residential property fits within the meaning of "common area" because it is accessed by two or more, or all, of the tenants and the lessor retains general control. Among other things, the lessor controls whether a parking lot is used by members of the public as well as by

7

tenants, the circumstances under which non-tenants can access the lot, the number and size of vehicles that a tenant can park in the lot, the lot's hours of operation, the means of identification of those entitled to park in the lot, and whether and how particular parking spaces will be allocated. Further, the lessor is responsible for the maintenance and security of the lot. Thus, we believe that parking lots within a leased residential property that are shared by two or more, or all, of the tenants constitute "common areas" under MCL 554.139(1)(a).

## B. LESSOR'S DUTY UNDER MCL 554.139(1)(a)

Because a parking lot within a leased residential property is a common area under MCL 554.139(1)(a), the lessor effectively has a contractual duty to keep the parking lot "fit for the use intended by the parties." The next question concerns whether this covenant encompasses the duty to keep the lot free from the natural accumulation of snow and ice. The Court of Appeals held:

> The intended use of a parking lot is to park cars and other motor vehicles; however, in order to access their vehicles and apartments, tenants must also necessarily walk on the parking lot. A second intended use of a parking lot, therefore, is walking on it. A parking lot covered with ice is not fit for this purpose. [*Allison*, *supra* at 670-671.]

We agree that the intended use of a parking lot includes the parking of vehicles. A parking lot is constructed for the primary purpose of storing vehicles on the lot. "Fit" is defined as "adapted or suited; appropriate[.]" *Random House Webster's College Dictionary* (1997). Therefore, a lessor has a duty to keep a parking lot adapted or suited for the parking of vehicles. A parking lot is generally

8

considered suitable for the parking of vehicles as long as the tenants are able to park their vehicles in the lot and have reasonable access to their vehicles. A lessor's obligation under MCL 554.139(1)(a) with regard to the accumulation of snow and ice concomitantly would commonly be to ensure that the entrance to, and the exit from, the lot is clear, that vehicles can access parking spaces, and that tenants have reasonable access to their parked vehicles. Fulfilling this obligation would allow the lot to be used as the parties intended it to be used.

In this case, in construing the meaning of these terms in the contract, neither of the parties has indicated that the intended use of the parking lot was anything other than basic parking and reasonable access to such parking. Plaintiff's allegation of unfitness was supported only by two facts: that the lot was covered with one to two inches of snow and that plaintiff fell. Under the facts presented in this record, we believe that there could not be reasonable differences of opinion regarding the fact that tenants were able to enter and exit the parking lot, to park their vehicles therein, and to access those vehicles. Accordingly, plaintiff has not established that tenants were unable to use the parking lot for its intended purpose, and his claim fails as a matter of law.

While a lessor may have some duty under MCL 554.139(1)(a) with regard to the accumulation of snow and ice in a parking lot, it would be triggered only under much more exigent circumstances than those obtaining in this case. The statute does not require a lessor to maintain a lot in an ideal condition or in the most accessible condition possible, but merely requires the lessor to maintain it in

a condition that renders it fit for use as a parking lot. Mere inconvenience of access, or the need to remove snow and ice from parked cars, will not defeat the characterization of a lot as being fit for its intended purposes.

We recognize that tenants must walk across a parking lot in order to access their vehicles. However, plaintiff did not show that the condition of the parking lot in this case precluded access to his vehicle. The Court of Appeals erred in concluding that, under the facts presented, the parking lot in this case was unfit simply because it was covered in snow and ice.[4] *Allison*, *supra* at 670-671. Further, we take issue with the suggestion of the Court of Appeals that a tenant traversing a parking lot, for any reason, might be able to take advantage of the covenant for fitness for the uses intended. A tenant using a common area for a purpose other than that for which the area is intended is not protected by the covenant for fitness, but would be afforded any protections provided by the common law. The statute does not require any level of fitness beyond what is necessary to allow tenants to use the parking lot as the parties intended. In addition, should this point need clarification, a non-tenant could never recover under the covenant for fitness because a lessor has no contractual relationship

---

[4] The dissent concludes that "plaintiff has made a sufficient showing to survive summary disposition under § 139(1)(a)" on the basis that "fitness for use includes safety." *Post* at 2-3. However, the dissent's analysis focuses exclusively on premises liability law, the subject of plaintiff's first claim, which, as stated earlier, is not before this Court. Perhaps most relevantly, we do not see walking across one to two inches of snow and ice as being as harrowing an experience as the dissent asserts.

with-- and, therefore, no duty under the statute to-- a non-tenant.[5] Plaintiff has not shown that the lot in this case was unfit for its intended use, and the Court of Appeals erred in concluding otherwise.

## C. LESSOR'S DUTY UNDER MCL 554.139(1)(b)

The final question concerns whether a lessor's duty to repair under MCL 554.139(1)(b) extends to snow and ice accumulation in a parking lot. We must distinguish the term "common areas" from the term "premises" if we are to give meaning to all the words of this statute. The lessor's duty under MCL 554.139(1)(a) applies to "the premises and all common areas," while the lessor's duty under MCL 554.139(1)(b) applies only to "the premises." We must "avoid a construction that would render any part of the statute surplusage or nugatory." *Wickens v Oakwood Healthcare Sys*, 465 Mich 53, 60; 631 NW2d 686 (2001).

"Premises" is defined as "a tract of land including its buildings" or "a building or part of a building together with its grounds or other appurtenances[.]" *Random House Webster's College Dictionary* (1997). Such a definition would seem to include everything within the boundaries of the apartment complex, including the common areas. However, a statute can give special meaning to a

---

[5] The dissent disagrees, citing the Second Restatement of Torts, § 357, which states that "'[a] lessor of land is subject to liability for physical harm caused to his lessee and others upon the land with consent of the lessee . . . .'" *Post* at 9. Again, the dissent's analysis would apply to premises liability law, under which a non-tenant guest would be entitled to the protections afforded a licensee under common-law principles. The dissent misapprehends what this case is about.

11

word apart from its everyday use. Under the doctrine of *noscitur a sociis*, a word is also given meaning in the context of the words around it. *Koontz, supra* at 318.

In this statute, the Legislature specifically set the term "common areas" apart from the term "premises" by applying the first covenant to both terms and the second covenant only to "premises." If we conclude that "premises" includes "common areas," then the phrase "and all common areas" would be entirely superfluous. The only way to give meaning to the phrase "and all common areas" in this context is to conclude that "premises" does not encompass "common areas" and that the covenant to repair under MCL 554.139(1)(b) does not apply to "common areas."[6]

The exclusion of common areas from the covenant to repair imposed by the statute does not necessarily mean that the lessor is free of any duty to repair common areas, because these areas must still be kept "fit for the use intended by the parties." The Legislature elected to impose two different duties on the lessor, one for "premises and all common areas" and one for only "premises," and differentiated those duties through its choice of language, one covenant requiring

---

[6] Even if common areas were covered by the covenant to keep the premises in reasonable repair, this covenant would not impose a duty on the lessor to keep parking lots free from the natural accumulation of snow and ice. "Repair" as a noun is defined as "the good condition resulting from continued maintenance and repairing." *Random House Webster's College Dictionary* (1997). "Repairing" involves "restor[ing] to a good or sound condition after decay or damage; mend[ing]." *Id*. Therefore, MCL 554.139(1)(b) refers to keeping the premises in a good condition as a result of restoring and mending damage to the property. There is nothing within the definition of "repair" that would include keeping a property free of snow and ice accumulation.

12

"fitness" and the other requiring "reasonable repair." Because both covenants imposed by the statute apply to premises, and only the covenant for fitness applies to common areas, we can reasonably infer that the Legislature intended to place a less onerous burden on the lessor with regard to common areas. Keeping common areas fit for their intended use may well require a lessor to perform maintenance and repairs to those areas, but may conceivably require repairs less extensive than those required by the second covenant. For example, if the lessor has a duty to repair a parking lot under MCL 554.139(1)(b), the lessor arguably may be required to fill a small pothole in the parking lot, even if that pothole did not affect the ability of the tenants to park in that lot. However, because the lessor does not have such a duty with regard to parking lots because they are common areas, the lessor would not necessarily be obligated to fill that pothole under the duties concerning fitness in MCL 554.139(1)(a).

In *Teufel*, *supra at* 429 n 1, the Court of Appeals held:

> Plaintiff also argues that the trial court erred when it failed to address his argument that [the lessor] had a statutory duty under MCL 554.139 to keep its premises and common areas in reasonable repair and fit for their intended uses, which negates the defense of open and obvious danger. Any error in the trial court's failure to address this argument is harmless. The plain meaning of "reasonable repair" as used in MCL 554.139(1)(b) requires repair of a defect in the premises. Accumulation of snow and ice is not a defect in the premises. Thus, a lessor's duty under MCL 554.139(1)(a) and (b) to keep its premises in reasonable repair and fit for its intended use does not extend to snow and ice removal.

This is an accurate assessment of the requirement of "reasonable repair" in MCL 554.139(1)(b). "Defect" is defined as "a fault or shortcoming; imperfection."

13

*Random House Webster's College Dictionary* (1997). Damage to the property would constitute an imperfection in the property that would require mending. Therefore, repairing a defect equates to keeping the premises in a good condition as a result of restoring and mending damage to the property. The accumulation of snow and ice does not constitute a defect in property, and, therefore, the lessor would have no duty under MCL 554.139(1)(b) with regard to snow and ice, except to the extent that such snow and ice caused damage to the property.

This conclusion can be analogized to the government's duty to maintain highways in reasonable repair under MCL 691.1402(1), the highway exception to governmental immunity. In *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 158; 615 NW2d 702 (2000), this Court held that the "highway exception waives the absolute immunity of governmental units with regard to defective highways under their jurisdiction." To recover under MCL 691.1402(1), a plaintiff must demonstrate that a defect in the highway was the proximate cause of the plaintiff's injury. *Haliw v Sterling Hts*, 464 Mich 297, 309 n 9; 627 NW2d 581 (2001). In *Haliw*, this Court specifically excluded the accumulation of snow and ice from consideration as a defect. *Id.* More recently, in *MacLachlan v Capital Area Transportation Auth*, 474 Mich 1059 (2006), this Court held that an accumulation of snow in the roadway did not constitute a "defect in the roadway rendering it unsafe for public travel at all times."

We hold that the lessor's duty to repair under MCL 554.139(1)(b) does not apply to common areas and, therefore, does not apply to parking lots. In addition,

14

MCL 554.139(1)(b) requires the lessor to repair defects in the premises, and the accumulation of snow and ice is not a defect. A lessor has no duty under MCL 554.139(1)(b) with regard to the natural accumulation of snow and ice.

## D. *TEUFEL* AS PRECEDENT

The Court of Appeals on reconsideration stated that the holding in *Teufel*, *supra* at 429 n 1, was legally flawed for failing to distinguish, or even mention, *O'Donnell v Garasic*, 259 Mich App 569; 676 NW2d 213 (2003), and for failing to conduct a separate analysis of MCL 554.139(1)(a) and (b). *Allison*, *supra* at 668-669. The Court proceeded to observe that it was not bound to follow the discussion of MCL 554.139(1)(a) and (b) in *Teufel* because, "[h]ad [the] Court in *Teufel* intended to create a rule of law regarding the availability of the open and obvious danger doctrine when a landlord has a statutory duty under MCL 554.139(1)(a) and (b), it would have done so in the body of the opinion rather than in a footnote." *Id*. at 669-670, citing *Guerra v Garratt,* 222 Mich App 285, 289-292; 564 NW2d 121 (1997).

The Court's reference to *Guerra* was misplaced. *Guerra* did not state that language set forth in a footnote does not constitute binding precedent. Rather, in *Guerra*, the Court of Appeals was attempting to interpret whether certain language in *Lemmerman v Fealk,* 449 Mich 56, 77 n 15; 534 NW2d 695 (1995), was meant to limit the retroactivity of the opinion's general holding or to create an exception to that holding. *Guerra, supra* at 291. The Court engaged in ordinary interpretative analysis, examining the circumstances and the context in order to

properly give meaning to the language. The Court of Appeals concluded that, given the fact that *Lemmerman* repeatedly set forth its general holding without suggesting any exception and specifically made a statement incompatible with such an exception, this Court would have placed any such exception to the general holding, if it had been intended, in the body of the opinion. *Id.* at 291-292. Therefore, the Court of Appeals determined that the footnote pertained to the retroactivity of the holding, and did not create an exception to that holding. The statement in *Guerra* regarding the *Lemmerman* footnote was merely an analysis of the context of language within a footnote and not a holding that a discussion within a footnote cannot constitute binding precedent.

The essential question is not whether the language in *Teufel* was contained within a footnote, but whether it created a "rule of law" for the purposes of MCR 7.215(J)(1).[7] A statement that is dictum does not constitute binding precedent under MCR 7.215(J)(1). *McNeil v Charlevoix Co*, 275 Mich App 686, 702; 741 NW2d 27 (2007). "[O]biter dictum" is defined as "1. an incidental remark or

---

[7] MCR 7.215 provides:

(J) Resolution of Conflicts in Court of Appeals Decisions.

(1) Precedential Effect of Published Decisions. A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule.

16

opinion.  2.  a judicial opinion in a matter related but not essential to a case." *Random House Webster's College Dictionary* (1997).

In *Teufel*, the plaintiff slipped and fell on ice in the parking lot of his apartment complex. *Teufel, supra* at 426.  The Court of Appeals held that the trial court properly granted summary disposition to the defendant apartment complex on the basis of the "open and obvious" danger doctrine.  *Id*. at 428-429.  The language in the *Teufel* footnote was not dictum; rather, the footnote addressed an alternative argument raised by the plaintiff regarding the applicability of MCL 554.139 and was, therefore, necessary to the disposition of the case.  Thus, the language in the footnote constituted a rule of law, and the Court of Appeals was obligated to follow this rule under MCR 7.215(J)(1).

The Court of Appeals' concern that *Teufel* itself did not follow the precedent of *O'Donnell* was without merit.  In *O'Donnell*, *supra* at 581, the Court of Appeals held that a defendant cannot use the "open and obvious" danger doctrine to avoid liability when the defendant has a statutory duty to maintain the premises in accordance with MCL 554.139(1)(a) and (b).  However, the *Teufel* footnote held that MCL 554.139(1)(a) and (b) do not apply to snow and ice removal.  Therefore, the "open and obvious" danger doctrine could avoid the defendants' liability in *Teufel*, and there was no need to refer to, nor was there any inconsistency with, *O'Donnell*.

Language set forth in a footnote can constitute binding precedent if the language creates a "rule of law" and is not merely dictum.  *Teufel*, *supra* at 429 n

17

1, created a rule of law that the Court of Appeals was bound to follow. MCR 7.215(J)(1). However, to the extent that *Teufel* held that a lessor's duty to maintain premises and common areas "fit for the use intended" under MCL 554.139(1)(a) can *never* include snow and ice removal, we overrule *Teufel*. There are conceivable circumstances in which a lessor may have a duty to remove snow and ice under MCL 554.139(1)(a), such as when the accumulation is so substantial that tenants cannot park or access their vehicles in a parking lot. As we have already observed, such circumstances were not present in this case. The Court of Appeals erred in reversing the trial court's order granting summary disposition in favor of defendants under the "open and obvious" danger doctrine.

## IV. CONCLUSION

We hold that: (1) parking lots in leased residential areas constitute "common areas" under MCL 554.139(1)(a); (2) the natural accumulation of snow and ice is subject to the lessor's duty established in MCL 554.139(1)(a), but that plaintiff has not shown the duty was violated here because the parking lot was apparently "fit for the use intended by the parties"; and (3) the natural accumulation of snow and ice is not subject to the lessor's duty established in MCL 554.139(1)(b). Moreover, we believe that the Court of Appeals acted contrary to MCR 7.215(J)(1) in failing to follow the precedent set forth in *Teufel* and erred in holding that language contained in a footnote cannot be binding precedent. However, we overrule *Teufel* to the extent that it is inconsistent with our holding in this case. Accordingly, we reverse the Court of Appeals judgment

18

and reinstate the trial court's order granting summary disposition in favor of defendants.

Stephen J. Markman
Clifford W. Taylor
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.

STATE OF MICHIGAN

SUPREME COURT

IRVING ALLISON,

       Plaintiff-Appellee,

v                                No. 133771

AEW CAPITAL MANAGEMENT, L.L.P.,
d/b/a SUTTON PLACE APARTMENTS,

       Defendant,

and

VILLAGE GREEN MANAGEMENT
COMPANY and BFMSIT, II,

       Defendants-Appellants.

_____

CORRIGAN, J. (*concurring*).

I concur in the result and virtually all of the reasoning of the majority opinion. In particular, I agree that (1) sidewalks and parking lots in leased residential areas are "common areas" under MCL 554.139(1)(a); (2) the natural accumulation of ice and snow is not subject to the lessor's duty under MCL 554.139(1)(b) to "keep the premises in reasonable repair"; and (3) the Court of Appeals erred in concluding that language in the footnote in *Teufel v Watkins*, 267 Mich App 425, 429 n 1; 705 NW2d 164 (2005), could not constitute binding precedent.

My sole area of disagreement with the majority concerns its analysis of whether a lessor's duty to keep the premises and common areas "fit for the use intended by the parties," MCL 554.139(1)(a), obligates the lessor to remove natural accumulations of snow and ice. The majority correctly observes that the parking lot here was "fit for the use intended by the parties" where only one to two inches of snow had accumulated. Yet the majority goes on to state that in "more exigent circumstances" a natural accumulation of snow or ice could trigger the statutory duty. Not only is this conclusion unnecessary to the disposition of this case, but I believe it is founded on an erroneous analysis.

MCL 554.139(1) provides in part:

> In every lease or license of residential premises, the lessor or licensor covenants:
>
> (a) That the premises and all common areas are fit for the use intended by the parties.

The majority resorts to a lay dictionary to define "fit" as "adapted or suited; appropriate[.]" *Ante* at 8, citing *Random House Webster's College Dictionary* (1997). The majority then concludes that in some unspecified "exigent circumstances," *ante* at 9, a natural accumulation of ice or snow could render the parking lot unfit for its intended use.

The majority's analysis hinges on its implicit view that the duty to keep the parking lot *itself* fit extends to *transient* conditions such as natural accumulations of snow or ice. This assumption overlooks a fair reading of the statutory text limiting the duty of fitness to the *physical structure* of the premises and common

2

areas.[1]  My analysis of the statutory covenant and its legal background suggests that it is limited to structural defects.

While a court may use a lay dictionary to define common words or phrases that lack a unique legal meaning, MCL 8.3a; *People v Thompson*, 477 Mich 146, 151-152; 730 NW2d 708 (2007), I would not assume that the terms used in MCL 554.139 lack an acquired legal meaning.  Indeed, it appears that the statute codifies the implied warranty of habitability, and that this warranty does not protect against transient conditions such as ice or snow.

The duties set forth in MCL 554.139 are directed at ensuring that the premises are habitable.  The statute was enacted "'to establish as a matter of law the landlord's promissory duty *to make the premises fit for habitation* at the time of taking possession and throughout the term of period of tenancy.'"  *Rome v Walker*, 38 Mich App 458, 462 n 3; 196 NW2d 850 (1972), quoting Schier, *Draftsman: Formulation of Policy*, 2 Prospectus, A Journal of Law Reform 227, 233 (1968) (emphasis added).

"At common law, a landlord generally had no duty to provide a habitable rental property."  49 Am Jur 2d, Landlord and Tenant, § 447, p 455.  See also *Fisher v Thirkell*, 21 Mich 1, 6-7 (1870).  That traditional rule was abrogated as a

---

[1] Notably, we have interpreted the highway exception to the governmental tort liability act, MCL 691.1402, in precisely this manner.  See *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 158; 615 NW2d 702 (2000); *Haliw v Sterling Hts*, 464 Mich 297; 627 NW2d 581 (2001) (holding that a natural accumulation of ice on a sidewalk did not implicate the highway exception because the plaintiff's injury was not caused by a defect in the sidewalk itself).

3

majority of jurisdictions adopted, either by common law or by express statutory provision, an implied warranty of habitability. 49 Am Jur 2d, Landlord and Tenant, § 447, p 455. [2]

"An implied warranty of habitability requires that a dwelling be *fit for its intended use; that is, it should be habitable and fit for living*." 52 CJS, Landlord & Tenant, § 687, p 607 (emphasis added). The warranty is breached where a "defect" exists that is "of a nature and kind which will prevent the use of the dwelling *for its intended purpose to provide premises fit for habitation by its dwellers*." 49 Am Jur 2d, Landlord and Tenant, § 450, p 459 (emphasis added). This implied warranty extends to common areas. See *id*., § 447, p 455. A reasonable inference arises from the language of MCL 554.139(1)(a) ("fit for the use intended by the parties") that it codifies the implied warranty of habitability. [3]

The warranty of habitability extends only to "significant, structural defects" that "render the premises uninhabitable in the eyes of a reasonable person." 52 CJS, Landlord & Tenant, § 687, p 607. The natural accumulation of ice or snow is *not* such a defect. *Id*. at 607 n 12; *McAllister v Boston Housing Auth*, 429 Mass

---

[2] The recognition of this warranty arose in light of "the realities of the modern urban landlord-tenant relationship." 52 CJS, Landlord & Tenant, § 687, p 606.

[3] See also *Browder, The taming of a duty – the tort liability of landlords*, 81 Mich L R 99, 112 n 55 (1982) (listing MCL 554.139 as an example of legislation that "has consisted of the enactment or amendment of landlord and tenant codes and laws, almost all of which have created a new duty in landlords *similar in scope to the implied warranty of habitability* declared by some courts") (emphasis added).

300, 306; 708 NE2d 95 (1999). The warranty extends only to "significant defects in the property itself." *McAllister*, *supra* at 305.[4]

Therefore, in light of the legal background of the implied warranty of habitability and the codification of that warranty in MCL 554.139, I question the majority's conclusion that the statutory duty applies to transitory conditions such as snow and ice accumulations. I would hold that the duty extends only to significant, structural defects that render the parking lot itself unfit for its intended use.

In any event, the majority's analysis of this issue is unnecessary to the disposition of this case. As the majority correctly concludes, the one to two inches of accumulated precipitation in this case did not render the parking lot unfit for its intended use. We thus need not speculate regarding whether a greater accumulation would, in some unspecified "exigent circumstances," trigger the statutory duty.

---

[4] In *Gossman v Lambrecht*, 54 Mich App 641, 645-646; 221 NW2d 424 (1974), our Court of Appeals recognized that "Michigan, although not explicitly, has followed the Massachusetts rule. Under that view a landlord, absent a contract, has no duty to his tenant to remove from common passageways any natural accumulation of snow and ice." The panel noted that "[a]dherents of the Massachusetts rule believe it better suited to northern climates where slippery conditions from ice and snow are natural, frequent and without fault of the landowner, unless he increases the hazard." *Id*. at 646. Although MCL 554.139 was not at issue in that case, the *Gossman* panel held that a section of the Housing Law, MCL 125.474, providing for the cleanliness of dwellings, required no more of a landowner than is required by the common law regarding the removal of snow and ice. *Id*. at 649.

5

For these reasons, I cannot join the majority's analysis in full.  In all other respects, I concur in the reasoning and conclusions set forth in the majority opinion.


Maura D. Corrigan

IRVING ALLISON,

      Plaintiff-Appellee,

v                                      No. 133771

AEW CAPITAL MANAGEMENT, L.L.P.,
d/b/a SUTTON PLACE APARTMENTS,

       Defendant,
and

VILLAGE GREEN MANAGEMENT
COMPANY and BFMSIT, II,

      Defendants-Appellants.

_____

CAVANAGH, J. (*dissenting*).

I agree with the majority's conclusions under MCL 554.139(1)(a) that a parking lot is a common area, the intended use of a parking lot includes walking to and from parked vehicles, accumulations of ice and snow may be subject to a landlord's duties under § 139(1)(a), and the "open and obvious danger" doctrine is inapplicable to the duty created by the statute.[1] However, I disagree with the majority's application of § 139(1)(a) in this case. While I tend to agree with the majority that one or two inches of snow would rarely make a parking lot unfit for

---

[1] I also agree that placement in a footnote does not, of itself, affect the language's precedential significance.

its intended use under § 139(1)(a), I cannot categorically conclude that an accumulation of one or two inches of snow or ice can never make a parking lot unfit. Specifically, I cannot conclude that the parking lot in this case was fit for its use on the facts presented. Thus, I respectfully dissent.

I believe that plaintiff has made a sufficient showing to survive summary disposition under § 139(1)(a). Section 139(1) provides that, in every lease or license of residential premises, a landlord has a duty to ensure that premises and common areas are fit for use, to keep the premises in reasonable repair, and to comply with health and safety laws. Review of a claim under § 139(1) requires a determination of where the claimed injury took place. If the injury occurred in a common area, § 139(1)(a) requires review of the parties' intended use for the common area and the area's fitness for that use.

In this case, plaintiff was defendant's tenant and suffered injury in defendant's apartment complex parking lot. The parking lot was a common area. Its intended use included parking vehicles, which includes walking to and from the vehicle. Plaintiff was walking to his vehicle when he slipped and fell; therefore, he was using the parking lot as the parties intended when he was injured.[2] So the next question is whether the parking lot was fit for its intended use when plaintiff fell.

---

[2] The majority states that "[a] tenant using a common area for a purpose other than that for which the area is intended is not protected by the covenant for fitness." *Ante* at 10. I disagree. The statute does not require that the injury occur

(. . . continued)

2

The concept of fitness for use includes safety. The Second Restatement of Torts states:

> [A]n invitee enters upon an implied representation or assurance that the land has been prepared and made ready and safe for his reception. He is therefore entitled to expect that the possessor will exercise reasonable care to make the land safe for his entry, or for his use for the purposes of the invitation. [2 Restatement Torts, 2d, § 343, comment *b*, p 216.]

Specifically in landlord and tenant law, this Court has stated that "a landlord may be held liable for an unreasonable risk of harm caused by a dangerous condition in the areas of common use retained in his control . . . ." *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 499; 418 NW2d 381 (1988). The *Williams* Court reasoned:

> The rationale behind imposing a duty to protect in these special relationships is based on control. In each situation one person entrusts himself to the control and protection of another, with a consequent loss of control to protect himself. The duty to protect is imposed upon the person in control because he is best able to provide *a place of safety*." [*Id.* (emphasis added).]

So § 139(1)(a), requiring fitness, imposes a duty on the landlord to ensure that common areas are safe for their intended use. Whether a common area is

---

(continued . . .)
while the common area is being used as intended. It requires the common area to be fit for the use intended. Thus, if the area is unfit for its intended use, an injured plaintiff may seek recovery for damages regardless of the use that plaintiff was making of the area when the injury occurred.

3

sufficiently safe to be fit for its intended purpose depends on the condition of the area in question.[3]

There appears to be some confusion about the condition of defendant's parking lot at the time of plaintiff's injury. The Court of Appeals described the condition as "[a] parking lot covered with ice,"[4] while the majority describes the condition as a lot with "one to two inches of accumulated snow." *Ante* at 2. A two-inch sheet of ice ordinarily presents a very different degree of danger from that ordinarily presented by two inches of snow. Typically, the danger associated with snow becomes greater as the snow becomes deeper. But ice may be dangerous at almost any thickness.

Plaintiff testified that when he left his apartment for work on the morning of March 13, 2003, the entire area was covered with "maybe an inch or two" of snow that had accumulated overnight. He stepped down the two stairs of his porch, walked down the sidewalk to the parking lot, and then began walking across the parking lot toward his car. After walking about 20 feet across the

---

[3] The trial court did not inquire into the condition of the common area because it applied improper legal standards. The trial court believed that MCL 554.139(1) did not apply to this case and the open and obvious danger doctrine did apply. Thus, the trial court only needed to know two facts: that plaintiff fell on ice or snow and the ice or snow was open and obvious. Plaintiff attempted to present more facts regarding the condition of the common area at the hearing on defendant's motion for summary disposition, but the trial court rebuffed the effort. Inquiry into the condition of the common area was irrelevant to the legal standards applied by the trial court.

[4] *Allison v AEW Capital Mgt, LLP (On Reconsideration)*, 274 Mich App 663, 671; 736 NW2d 307 (2007).

parking lot toward his car, plaintiff slipped and fell. In deposition testimony, plaintiff described how he fell: "I just take the step and then my foot falls or slips out from under me, and then I fell and then I—that's basically it. My foot slipped. It was the ice that I slipped on." When asked how he knew that he slipped on "ice versus snow," plaintiff stated: "Well, because the way my foot slipped. It slipped and my leg just went from under me and then when I fell, I saw where my foot slipped, I saw ice." So, according to the only evidence available to this Court, plaintiff slipped on ice in defendant's parking lot. I believe that a parking lot covered with ice is not fit for its intended use because it is not safe for walking.

The majority states that "[m]ere inconvenience" does not make a common area unfit for its intended use. *Ante* at 10. But the ice-covered surface of defendant's parking lot presented a much greater danger to plaintiff than mere inconvenience. Plaintiff's fall on ice in defendant's parking lot caused severe injury. Plaintiff's fractured ankle required extensive surgery. Plaintiff was not able to return to work for three months following surgery. In deposition testimony two years after the injury, plaintiff stated, "I always have pain and restrictions . . . I have pain in my ankle every day." Further, plaintiff is subject to ankle "re-sprains" three or four times a week. I would not call the condition plaintiff faced a mere inconvenience. And I would not call a common area that presented such a danger fit for its intended use.

The majority states that the parking lot was fit for its intended use because "tenants were able to enter and exit the parking lot, to park their vehicles therein, and to access those vehicles." *Ante* at 9. I am unaware of any evidence to support this conclusion. The only fact established on this point is that plaintiff was not able to access his vehicle without injury. The majority concludes that the parking lot was fit for its intended use when plaintiff fell because "plaintiff did not show that the condition of the parking lot in this case precluded access to his vehicle." *Ante* at 10. But, as mentioned, access to vehicles must be safe in order to be fit. Plaintiff could access his vehicle only by risking serious injury.

A landlord's duty to provide safe common areas does not preclude a tenant's duty to take steps within his control to keep himself safe. The trial court intimated as much when it opined on the proper method of walking on ice: "I suggest that—I call it the Michigan shuffle, but you don't necessarily walk; you do the skating." Contrary to the apparent perception of the trial court, plaintiff testified in deposition that he took every reasonable precaution: he was wearing boots specifically made for walking on snow, he watched where he was going, and he proceeded with great care when crossing the parking lot. Despite his best efforts to attend to his safety by means within his control, he was injured. At this pretrial stage, I believe that plaintiff has raised a genuine issue of fact concerning whether the parking lot was unfit. Thus, summary disposition is inappropriate.

If a plaintiff is able to show that a common area is not fit for its intended use, the reasonableness of the landlord's actions to remedy the unfit condition

6

should also be assessed. "[A] contract to keep the premises in safe condition subjects the lessor to liability only if he does not exercise reasonable care after he has had notice of the need of repairs. In any case his obligation is only one of reasonable care." 2 Restatement Torts, 2d, § 357, comment *d*, pp 242-243. In this case, if the parking lot is found unfit, there is a valid question whether defendant exercised reasonable care to remedy the unfit condition. I would remand the case to the trial court for further inquiry into these matters under the proper legal standards.

I would also state a clearer standard for a landlord's liability regarding ice and snow than the majority provides to guide courts facing similar claims in the future. Because fitness for use requires a landlord to take measures to provide safe common areas, and because a landlord's duty requires exercise of reasonable care, I would apply the standard of *Quinlivan v Great Atlantic & Pacific Tea Co, Inc*, 395 Mich 244, 261; 235 NW2d 732 (1975): the duty owed by a landlord to a tenant regarding ice and snow requires that "reasonable measures be taken within a reasonable time after an accumulation of ice and snow to diminish the hazard of injury to the [tenant]." This standard arose in tort law, but it applies to fitness for use as well. It is faithful to the statute and readily applicable for courts in the future.

I generally agree with the majority's analysis (if not its application) of § 139(1)(a), but I believe the majority has unnecessarily reached several issues. These matters are not necessary to the majority's disposition of the case; thus,

they are dicta. Nonetheless, I disagree with several of these extraneous conclusions. First, because the majority holds that defendant is entitled to summary disposition, there is no need to determine plaintiff's potential remedy. However, I would hold that a plaintiff who proves a claim under MCL 554.139(1) is entitled to full damages for the injury. The Second Restatement of Torts, § 357, states:

> A lessor of land is subject to liability for physical harm caused to his lessee and others upon the land with the consent of the lessee or his sublessee by a condition of disrepair existing before or arising after the lessee has taken possession if
>
> (a) the lessor, as such, has contracted by a covenant in the lease or otherwise to keep the land in repair, and
>
> (b) the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor's agreement would have prevented, and
>
> (c) the lessor fails to exercise reasonable care to perform his contract. [*Id.* at 241.]

The comments to that section state that "the duty arises out of the existence of the contract to repair." *Id.*, comment *d*, p 242. The comments further state that "[t]he lessor's duty under the rule stated in this Section is not merely contractual, although it is founded upon a contract. It is a tort duty." *Id.*, § 357, comment *c*, p 242. There is no reason this liability should not apply under MCL 554.139(1). Indeed, it should apply because the statute's very purpose is to provide safety in areas outside the tenant's control. *Williams*, *supra* at 499 ("duty to protect is imposed upon the person in control because he is best able to provide a place of safety").

8

Also, because this case involves a tenant only, there is no reason to address a landlord's liability to nontenants under § 139(1). However, I believe the majority incorrectly asserts that a nontenant could never recover under the covenant for fitness because a lessor has no contractual relationship with a nontenant. The Second Restatement of Torts, § 357, states that "[a] lessor of land is subject to liability for physical harm caused to his lessee and *others upon the land with consent of the lessee . . . .*" *Id.* at 241 (emphasis added). Additionally, I believe the intended use of a parking lot in an apartment complex will generally include, at minimum, parking (and walking) for a tenant's guests. An apartment is a tenant's home. It is likely that both parties to an apartment lease intend the parking lot to be used by guests as well as tenants.

Finally, I believe that MCL 554.139(1)(b) may apply to common areas. Section 139(1)(b) contains two independent covenants. The first is "[t]o keep the premises in reasonable repair during the term of the lease." The second is "to comply with the applicable health and safety laws of the state and of the local government." The second is independent of the first and is not confined to the "premises." Therefore, a landlord may be liable for an injury sustained in a common area due to a condition that does not comply with health and safety laws. I would direct the trial court to examine whether plaintiff has a claim under the second covenant of § 139(1)(b).

The trial court in this case found that § 139(1) did not apply and the open and obvious danger doctrine did apply. The majority determines that § 139(1)

9

applies and the open and obvious danger doctrine does not. I agree with that determination, but I would affirm the result of the Court of Appeals and remand this case to the trial court for further proceedings under the proper legal standards.

<div style="margin-left:40%;">

Michael F. Cavanagh
Marilyn Kelly

</div>